THOMAS DEVER v. GEORGE A. CLARK.

1. LIBEL — *Answer* — *Stating Facts.* The defendant, in a civil action against him for libel, may, where the alleged libel is specific, merely answer that the charge is true; but where the charge is in general terms the answer must allege the facts upon which he relies to make out the charge.

2. ———— *Pleadings* — *Evidence.* The pleadings in this case examined, and the allegations in the petition and answer, *held*, to show that the alleged libelous matters were so clearly and specifically stated as to authorize the defendant to introduce evidence in justification thereof.

*Error from Geary District Court.*

ON the 9th day of July, 1887, *Thomas Dever* commenced his action against *George A. Clark* to recover damages for the publication of two alleged libels. The first publication was as follows:

"A raid was made on the Clay Center joint last Tuesday, and 97 cases of beer and 12 jugs of bug-juice seized. Tom Keefe was arrested, but Tom says he does not own the place, and that it has been closed since May 1. The beer and juice was transferred to the police court room. His honor now has more cases before him than ever, but it is a matter of some doubt whether each case contains $2.50 for a certain limb of the law or not. Keefe says the authorities left the place open, and that about 4,000 cigars were stolen Tuesday night. Of course, here is cause for action for damages. But so long as the city is represented by such ponderous brain and legal talent, the community will not suffer defeat in the courts. We understand a telegram was received Wednesday to the effect that the beer belonged to outside parties, and was only stored here for a time. This must be true, for we have noticed an unusual number of Clay Center people about the depot during the past two weeks. Between Tom Dever and Clay Center, Junction City's reputation is bound to go to the wall if some action in self-defense is not soon taken."

The second publication was as follows:

"The party organ seems to be very bitter against the city attorney for pulling the beer. What is the matter? It is rumored on the street that the attorney has a libel suit in soak."—*Union.*

"The 'party organ' is 'bitter' against no one. So long as a person works for the interests of the city the *Republican* will heartily indorse anything they may do, but when it comes to throwing the city into costs just for the sake of letting a certain limb of the law make $2.50 per case, whether he wins the case or not, is getting rather gauzy. The individual in controversy has no more right to the claim of being an attorney than the devil has to a seat in heaven. The *Republican* has no ax to grind in this matter, further than it does not intend to remain silent and see the city filched without some return.

"The position which this paper has always taken on the prohibition question is too well known to require space in this

article. It is very different from the course pursued by the *Union*. The *Republican* has stood up for the temperance cause when the editor of the *Union* winked at and illegally licensed the sale and barter of whisky and beer. While the *Union* has heaped all manner of abuse on the W. C. T. U., the *Republican* had defended these ladies in their efforts to suppress the sale of the damnable stuff. And now that victory has been won it does not intend to remain quiet and see a jack-legged lawyer prostitute the noble cause, and run the city into hundreds of dollars in costs for the sake of a paltry $2.50 fee. A lawyer who has no more sense than to appeal a city case from the police court to the district court, is legally too transparent for an intelligent community to tolerate. This same lawyer (?) — according to the last statement of the city clerk — stuck the city for costs to the amount of $46.10 in city cases which he appealed to the district court, and which were thrown out of said court.

"Upon a close examination of the clerk's statement we find $18.50 is the amount collected in the police court during the past quarter. During the same time the city paid its city attorney $54.10. And for what? Was it for the cases he lost before the police court? We recapitulate:

Cost in district court because of an incompetent city attorney, $46 70
Paid same attorney during quarter.......................... 54 10

$100 80
Received from police court................................ 18 50

$82 30

"We find that the city is loser to the tune of $82.30 for taking the advice of one who knows nothing about law. Of course the tax-payers will have to stand this. The citizens of Junction City can stand legitimate expenses, but when it comes to paying for the blunders of an incompetent individual it is time to raise a kick, and the *Republican* is not afraid to head that kick. If it is necessary for the city to employ a lawyer, it will be cheaper to get one who has brains and ability enough to represent it intelligently and protect its interests. We like to see a man busy, but not at the expense of the community.

"The *Republican* has no war to make on any officials so long as they perform the duties of their offices intelligently and faithfully and protect the interests of the people, but it does not intend to remain quiet and see the city systematically filched and run into debt by a shyster who knows more about

sawing wood than he does about the rudiments and the practice of law. If Mr. Dever has a libel suit in soak we would suggest that he remove it and substitute his head. If necessary, a very interesting chapter, backed by affidavits, can be furnished next week."

On July 26, 1887, the defendant filed his answer as follows, omitting caption:

"1. In answer to plaintiff's first cause of action the defendant says he admits the publication of the matter alleged, but he denies that the matters therein contained mean, or were intended to convey the meaning represented and set forth by the plaintiff in his petition; and for further answer, defendant avers that the matters and things contained in said publication are and were true, and were published of and concerning the official conduct of the plaintiff as a public officer.

"2. In answer to the second cause of action of the plaintiff, defendant says that he admits the publication of the matter alleged to contain the supposed libel, but he denies that the matters and things contained therein mean, or were intended to convey the meaning attributed to them as alleged in said petition. The defendant further says that the matters and things contained in said publication were true, and the same were published of and concerning the official conduct of the plaintiff as a public officer.

"3. Except so far as hereinbefore admitted, defendant denies each and every allegation contained in plaintiff's petition."

On August 20, 1887, the plaintiff filed the following motion, omitting caption:

"Comes now said plaintiff and asks the court to require said defendant to file with and attach to his answer filed herein, a bill of particulars, specifically setting out the matters and things contained in the articles published by said defendant, and which said defendant justifies in his said answer by plea that said matters and things are and were true.

On the 21st of September, 1887, this motion was heard, and the court made the following order thereon:

"That said answer specifically set up all matters pleaded as true in justification or mitigation; and further, that each of said matters be specifically set out by a statement of the facts

in relation thereto, and also that said defendant separately state and number each of his several defenses. The defendant asks and is by the court given 90 days from the rising of the court to file amended answer, and the plaintiff is allowed 30 days thereafter to plead thereto. And case continued until the next term of this court."

On the 24th of December, 1887, the defendant filed the following amended ;answer or bill of particulars, omitting caption:

"That in the following statement, cited in plaintiff's petition (the second cause of action thereof), and contained in Exhibit B, attached to said petition, to wit: 'A lawyer who has no more sense than to appeal a city case from the police court to the district court, is legally too transparent for an intelligent ‘community to tolerate,' reference was made by the defendant to the case of The City of Junction City against W. D. Grant, and the two cases of Junction City, plaintiff, v. Ida C. Blue, defendant, attempted to be taken by said plaintiff, as attorney of said city, from the police court of said city to the district court of Davis [now Geary] county, Kansas, filed in the office of the clerk of said court and there numbered respectively, 1750, 1748, and 1749.

"And defendant further says that the other matters published by defendant and complained of in said petition of plaintiff, do not in their nature admit of particularization, further than appears in the context of said publication."

On December 30, 1887, the plaintiff filed the following motion, omitting caption: "Comes now said plaintiff and asks the court to strike out and render for naught the amended answer of the defendant herein filed, for the reason that said answer is not in accordance with the order of this court heretofore made in this cause." In which order said defendant was required and ordered "to make his answer more definite and certain in that, to wit: that said answer specifically set up all matters pleaded as true in justification or mitigation; and, further, that each of said matters be specifically set out by a statement of the facts in relation thereto." And also the further order, "that said defendant separately state and number each of his several defenses."

On the 29th of March, 1888, the court overruled the motion to strike out the amended answer, and plaintiff excepted. The case then came on in its regular order for trial, and the plaintiff objected to going to trial, upon the ground that a sufficient amended answer or bill of particulars had not been filed. This was overruled by the court. The plaintiff also objected to going to trial upon the merits and the pleadings as made up, which objection was overruled by the trial court, and the plaintiff excepted. The case was heard before the court with a jury, and the jury returned a verdict in favor of the defendant and against the plaintiff. Subsequently the plaintiff filed his motion for a new trial, which was overruled. Judgment was rendered in favor of the defendant and against the plaintiff, and for costs. The plaintiff excepted, and brings the case here.

*Thomas Dever*, plaintiff in error, for himself.

The opinion of the court was delivered by

HORTON, C. J.: The principal contention in this case is that the defendant's answer was insufficient as a plea of justification; therefore, that the trial court committed error in permitting the defendant to offer any testimony in the case under his answer or amended answer. Section 125 of the civil code reads:

·"In an action for libel or slander, it shall be sufficient to state, generally, that the defamatory matter was published or spoken of the plaintiff; and if the allegation be denied, the plaintiff must prove, on the trial, the facts, showing that the defamatory matter was published or spoken of him."

Section 126 of the civil code provides:

"In the action mentioned in the last section, the defendant may allege the truth of the matter charged as defamatory, and may prove the same and any mitigating circumstances, to reduce the amount of damages, or he may prove either."

The requisites of an answer in an action for libel for justification depend upon whether the charge is general or specific.

Where the charge is specific, it is sufficient to state that the supposed defamatory words or libelous publication set forth in the petition are true. Where the charge is in general terms, the answer must state the facts which show the defamatory words or libelous publication to be true; it is not sufficient merely to allege that the charge is true. Bliss states the rule as follows:

"When the defamatory words, as set out, are sufficient of themselves to describe the offense, then a general affirmation of their truth has been held to be sufficient; but, otherwise, the plea or answer of justification must show the facts that constitute the offense with the same particularity as an indictment for the same offense. The plaintiff is, in fact, put on trial, and the defendant can only sustain himself by stating and proving the commission of a specific offense which would warrant the charge; and if there is a variance, or if the quasi-indictment is less broad than the charge, or if it omits an element necessary to constitute the offense charged, it is no justification. In regard to justification by showing that the publication was privileged, the code has made no change. The facts that will thus shield the defendant are, as they always were, new matter to be pleaded." (Sec. 361, Code Pleading.)

See also *Stith v. Fullinwider*, 40 Kas. 73; Townshend, Sl. & Lib., §§ 212, 355, 382; *Van Derveer v. Sutphin*, 5 Ohio St. 293; *Castle v. Houston*, 19 Kas. 426; *Thompson v. Press Co.*, 33 N. W. Rep. 856; *Sunman v. Brewin*, 52 Ind. 140.

If the charge be that the plaintiff is a swindler, or a thief, or a perjurer, or a murderer, or that he stole a watch, or certified a lie, or was of intemperate habits, or received a bribe, or perverted the law, it is not sufficient merely to allege that the charge is true. The plea of justification must set up the facts upon which the defendant relies to make out a charge. (Townshend, Slander & Libel, § 355; Newell on Slander & Libel, §§ 68–84.) In this case, considering the allegations of the petition and the answer as amended, we think the alleged libelous charges were so specific as to permit the defendant to offer proof in justification. These charges are fully set forth in the statement of the case, and need not be repeated here.

From the petition and answer, the court was clearly able to determine that the alleged charges were libelous, and we think the plaintiff must have been fully prepared, from the allegations of the petition and answer, to meet the proof of the defendant.

Complaint is also made that the defendant was permitted, without a sufficient plea therefor, to prove mitigating circumstances. The record recites "that the defendant, to maintain the issues upon his part, offered his proof, and the plaintiff thereupon objected to the introduction of any testimony in justification or mitigation under the defendant's answer; and the court overruled the objection and permitted the introduction of such testimony, to which ruling and the introduction of such testimony the plaintiff at the time excepted."

There is no testimony contained in the record, and as the jury found in favor of the defendant and against the plaintiff, it is apparent that this verdict was rendered upon the plea of justification, and not on account of any mitigating circumstances; therefore we cannot say, from the record, that any material error was committed in the ruling of the trial court. The same may also be said of the instructions given and refused, as none of the testimony is preserved.

Plaintiff insists that the instructions could not be applicable to the case under any state of facts, and especially criticised one of the instructions that the jury might consider in assessing the amount of damages, whether or no the alleged libelous charges were maliciously made. This instruction should be construed with the others given to the jury. In this light the instructions might all have been applicable. Among other things, the court instructed the jury as follows:

"1. Libel is defined by our statute, so far as applicable to this case, as the malicious defamation of a person, made public by any printing or writing tending to provoke him to wrath, or expose him to public hatred, contempt or ridicule, or to deprive him of the benefits of public confidence and social intercourse.

"2. Both of the articles complained of by the plaintiff in his petition, copies of which articles are attached to said peti-

tion, are libelous in themselves, and unless the defendant proves them to be true, by a preponderance of the evidence, then the plaintiff would be entitled to recover such damages as he has sustained by the publication of said articles.

"3. The defendant, as already stated, pleads as a defense, that the matters published by him and complained of by the plaintiff are true, and it devolves upon him to prove, by a preponderance of the evidence, the truth of said matter; and if he has succeeded in establishing the truth of the matter charged as defamatory in the plaintiff's petition, by a preponderance of the testimony, then your verdict must be for the defendant.

"4. And this is true, no matter what the motives of the defendant may have been in the publication thereof. It is no concern of yours. It is no concern of the plaintiff, or of anybody else, what the defendant's motives in such publication may have been. It is a complete defense to this action, if he has succeeded in establishing the truth of the matters published by him concerning the plaintiff.

"5. Although the plaintiff alleges in his petition that he has, on account of the publications complained of, sustained a damage of one thousand dollars on account of each of said publications, it is not necessary for him to prove any specific damage; for the law presumes the reputation of the plaintiff to be good, as also it presumes that his official duties as a public officer were honestly performed, and his professional obligations properly discharged; and an article which tends to hold him up to the public view as an unskilled lawyer and an incompetent officer, is libelous *per se*, (*per se* meaning, of itself,) and entitles the plaintiff to damages, unless the defendant establishes the truth of said publication by a preponderance of the evidence."

These instructions were clearly applicable under the statement made by the plaintiff in his brief, and intelligently presented the issues to the jury under the plea of justification.

The judgment of the district court will be affirmed.

All the Justices concurring.