# STARK, Appellant, v. PUBLISHERS GEORGE KNAPP & COMPANY.

## Division One, March 12, 1901.

1. **Libel:** PLAINTIFF'S REPUTATION UNASSAILED. The rule in this State seems to be that proof of plaintiff's good character prior to the publication of the alleged libel, is not admissible, in chief and before defendant has introduced any evidence assailing it, for the purpose of proving that he is not guilty of the matters with which he is charged in the publication; but such evidence is admissible as bearing upon the question of damages to be assessed in the event that the jury should find for him. But where the jury finds for defendant, it will not be held to be reversible error that the court refused such evidence when offered by plaintiff before his good name was assailed.

2. ————: SPECIFIC DENIALS. Where the defamatory matter is charged in general terms, the particular facts relied upon as warranting the inference charged, must be set forth specifically in a plea of justification. But when it is itself specific, it is sufficient to plead generally that the charge is true.

3. ————: ————: CASE STATED. In this case, the substance of the defamatory matter charged was that the plaintiff, as attorney of a corrupt school board, and as the representative of a corrupt political combine, and as the leader of a lobby composed of "go-betweens" and contractors, who had fattened on the corruption of the present management of said school board, was working with the Legislature to defeat the passage of a law abolishing said board, and was, as such, "a malign influence." *Held*, that the charge was sufficiently specific to advise the plaintiff of the particular matter he would be called upon to meet.

4. ————: ————: NO OBJECTION: PRACTICE. If the plaintiff desires the appellate court to hold that defendant's plea of justification was not sufficiently specific, he must in some way object in the trial court to its deficiency in that respect.

Vol 160 mo—34

5. **Practice: EVIDENCE: GENERAL OBJECTION.** Where the only objection to the introduction of evidence is that it is "incompetent and immaterial," the evidence should be admitted if it is competent for any purpose, nor will the appellate court on review look into the question to see or conjecture on what ground the evidence was objectionable.

6. **Libel: LOBBYIST: INSTRUCTION.** The undisputed facts were that plaintiff was the salaried attorney of a school board, that he went to the State capital at the instance of its members, that the existence of the board as then constituted and his tenure of office were threatened by a bill then pending before the Legislature, that he spent two weeks in lobbying against said measure, and his expenses during such service were demanded of and paid by said board out of the public school moneys, and that on a former occasion he had in like character performed like services in regard to another bill, for which he presented a demand for several thousand dollars. *Held,* that an instruction to the effect that the school board had no right to engage any one to lobby against such bill, or any other affecting their tenure of office, and that neither its members nor plaintiff had any right to lobby in their official capacity against any public measure, was not error, and not inappropriate under the circumstances of the case.

Appeal from St. Louis City Circuit Court.—*Hon. Selden P. Spencer,* Judge.

AFFIRMED.

*Chester H. Krum* for appellant.

(1)   The evidence offered in chief to prove that prior to the publication the appellant enjoyed a good general reputation for honesty and upright conduct, was improperly excluded.   Smith v. Lovelace, 1 Dew. 215; Harding v. Brooks, 5 Pick. 244; Dudley v. McCluer, 65 Mo. 243; Williams v. Haig, 3 Rich. 362; Hurn v. Wilson, 28 Ind. 276; Bennett v. Hyde, 6 Conn. 24; Schroyer v. Miller, 3 W. Va. 158; Adams v. Lawson, 17 Gratt. 250.   The depositions offered to show the existence of a lobby, and some connection

of the appellant with such lobby, were utterly incompetent. Answer admits publication; contains no averments by way of general denial; no specification as to respect in which article is true. A justification must always be specially pleaded, and with sufficient particularity to enable plaintiff to know precisely what the charge is, which he will have to meet. The plea is always construed strictly against the party pleading it. It must justify the whole of the words to which it is pleaded, and set forth facts issuably. Leyman v. Latiner, 3 Ex. D. 15, 352; Jones v. Stevens, 11 Price, 235; Smith v. Tribune Co., 4 Biss. 477; Whittemore v. Weiss, 33 Mich. 348. Where the imputation complained of is a conclusion or inference from certain facts, the plea of justification must aver the existence of a state of facts, which will warrant the inference of the charge. Van Ness v. Hamilton, 19 Johns. 349; Johnson v. Stebbins, 5 Ind. 364. (2) Defamatory matter must be justified as explained by the innuendoes. "The doctrine is well settled that, so far as jurisdiction is concerned, it is justified as applied, or explained by the innuendoes; and, therefore, there can be no justification made out by the evidence unless the facts are proven true as alleged in the declaration and with the meaning there averred, unless with the aid of the colloquium such meaning is repugnant." Atkinson v. Free Press, 46 Mich. 341; Bissell v. Cornell, 24 Wend. 354; Bailey v. Kalamazoo Pub. Co., 40 Mich. 251; Gage v. Robinson, 12 Ohio, 250; Downey v. Dillon, 52 Ind. 424. There is nothing by way of averment to bring the situation within the reprobation of lobbying as understood in the adjudications. Marshall v. Railroad, 16 How. 325; Strathman v. Gorla, 14 Mo. App. 1; Trist v. Childs, 21 Wall. 450; 9 Am. and Eng. Ency. of Law, 903. Evidence as to any such matters would be clearly incompetent, because the averment concerns a charge other than that constituting the libel. Ridley

v. Perry, 16 Me. 21; Pallett v. Sargent, 36 N. H. 496.    (3)
(a)    A newspaper publisher does not possess a peculiar priv-
ilege, and is not charged with a special duty.    Aldrich v.
Press, 9 Minn. 138; Salman v. Isaac, 20 L. T. 886; McGin-
nis, v. Knapp, 109 Mo. 131; Rearick v. Wilcox, 81 Ill. 77.
(b) Conceding that persons seeking to control legislation may
properly be criticised, and their doings canvassed, yet their
reputations may not be calumniated.    The situation is a pub-
lic one, and the position of the person assailed, in principle,
somewhat like that of a public officer.    The occasion will not
of itself excuse an aspersive attack upon the character of the
individual, and to be excused, the critic must show the truth
of what he charges.    Hamilton v. Eno, 81 N. Y. 126; Smith
v. Burrus, 106 Mo. 94; Snyder v. Fulton, 34 Mo. 128;
Revaud v. De Camp, 96 Pa. St. 493; McGinnis v. Knapp,
109 Mo. 131; Rearick v. Wilcox, 81 Ill. 677; Wilson v.
Fitch, 41 Cal. 363; Cooper v. Storie, 24 Wend. 434.    (4)
(a) . No publication can be held to be privileged when its
expressions  are beyond what common sense indicates to be
justifiable.    Fryer v. Kinnessley, 15 C. B. (N. S.)  422;
Flood on L. & S. 212.    (b)    Even under the doctrine of
qualified privilege, the publication must have been made not
merely in the course of duty—that is, on an occasion which
would justify it—but also from a sense of duty and with be-
lief in its truth.    Dawkins v. Paulet, L. R. 5 Q. B. 102.
(c)    Exaggerated or unwarrantable expressions destroy the
privilege.    It extends to nothing which is not justified by the
occasion.    Warren v. Warren, 16 M. & R. 251; Senior v.
Medland, 4 H. & N. 843; Bromage v. Prosser, 4 B. & C.
247.    (5)    The entire answer thus does not plead the facts
constituting defenses.    The first plea is bad, because not being
as broad as the libel.    The second plea is bad as setting forth
no facts showing justification or privilege.    The court, in

fact, held, that the publication was not privileged, but completely erred in accepting the answer as a sufficient plea of justification.   (6)   The instruction given by the court of its own motion, in regard to the attitude of the appellant before the public in the matter of his course before the Legislature, and towards members, is not only erroneous, but deserves an express rebuke at the hands of this court.   (a)   At the very outset, the instruction is erroneous, because it does not indicate in what respect the article complained of must be found to be true.   Had the libel been that the appellant was a thief, and the answer merely that the charge was true, it would have been a good instruction (on the theory of the one now considered), had the court merely told the jury, that if they found that the publication was true they should find for the respondent, without indicating at all the respects in which the finding of the truth must be had.   (b)   But this is an inconsiderable point, in comparison with the other objections to which this extraordinary instruction is open.

*Boyle, Priest & Lehmann,* and *Morton Jourdan* for respondent.

(1)   Upon the undisputable facts of the case the judgment is for the right party, and therefore will not be reversed. Vaughan v. Daniels, 98 Mo. 230; Williams v. Mitchell, 112 Mo. 300; State v. Jones, 131 Mo. 194.   (2)   No objection having been made to the answer in the court below, the plaintiff will not be permitted to object here that the answer is not sufficiently specific.   Klein v. Fischer, 30 Mo. App. 568; Williams v. Railroad, 112 Mo. 463.   (3)   It was not necessary to prove the truth of every detail of the publication; it was enough to show that it was true in so far as it imputed wrongdoing to the plaintiff.   Edwards v. Knapp, 97 Mo. 432; Ratcliffe v. Courier, 36 S. W. 177; Jackson v. Times,

25 Atl. 613. (4) Attempting to influence legislative action by personal interviews with and individual solicitation of members is lobbying. Cooley Const. Lim. (5 Ed.), 165; Lyon v. Mitchell, 36 U. S. 241; Frost v. Belmont, 6 Allen (Mass.) 152; Trist v. Child, 21 Wall. 441. (5) The plaintiff, at the suggestion of some members of the school board, went to the capital and lobbied against the "Civic Federation" bill. He demanded and they paid him money from the public school funds to pay the expenses of his lobbying. This action on his part and theirs was illegal, immoral and corrupt. Frost v. Belmont, 88 Mass. 152; Minot v. West Roxbury, 112 Mass. 1; Coolidge v. Brookline, 114 Mass. 592; Mead v. Acton, 139 Mo. 341; Westbrook v. Deering, 63 Maine, 231; Colusa County v. Welch, 55 Pac. Rep. 243; Julian v. State, 39 N. E. 923; Pingery v. Washburn, 1 Aiken (Vt.) 264; Henderson v. Covington, 14 Bush. (Ky.) 312. (6) The lobbying methods of the defendant, as disclosed by his own testimony, were immoral and fraudulent. See cases cited under point 5, and Marshall v. Railroad, 16 How. (U. S.) 314. (7) No claim of right could excuse the plaintiff, or make the publication complained of libelous, when it simply denounced his conduct, as the law denounced it, as immoral, fraudulent and corrupt. Abbott's Law Dic., 295; Black's Law Dic., 281; Bouvier's Law Dic., 446; Stow v. Converse, 3 Conn. 325; Bank v. Butts, 9 Mass. 4; Bank v. Basel, 47 Mo. 416; Comm. v. Bagley, 7 Pick. 279; United States v. Anthony, 11 Blatchf. 207; State v. King, 86 N. C. 603; State v. Voight, 90 N. C. 741. (8) It was not error to exclude evidence of plaintiff's previous reputation when it was offered by him in chief, and no such evidence was offered in rebuttal. The court instructed that his reputation must be presumed to be good. As his own testimony shows that he was guilty of corrupt conduct in connection with

his lobbying, the exclusion of evidence as to his previous reputation was not prejudicial error. Townshend on Slander and Libel (4 Ed.), 645; Inman v. Foster, 8 Wend. 602; Harbison v. Shook, 41 Ill. 142. (9) The plaintiff was shown to have been cognizant of and to have assented to the use of money to defeat the bill. It was, therefore, competent to prove the particular way in which the money was used, and how the bill was to be defeated.

BRACE, P. J.—This is an action for libel, against the defendants, publishers of The St. Louis Republic. The petition charges:

"That heretofore, to-wit, on the eighteenth day of March, eighteen hundred and ninety-seven, at the said city, the said defendant maliciously published in the said newspaper in an editorial, entitled "That Lobby Settles It," of and concerning the plaintiff, the following false and defamatory matter, to-wit:

" 'Malign is a good word to apply to the influences working at Jefferson City to defeat the Civic Federation School Bill in the State Senate. Led by Attorney Stark, who represents the Filley combine of the school board, the lobby against the bill is composed of contractors and "go-betweens" who have fattened on the corruption of the present system and are working for a continuance of fat opportunities.

" 'For Democratic Senators to yield to the blandishments of a corrupt Filley combine, would be the hardest blow that could be delivered against the Democracy of St. Louis in the approaching election. It would gain for the combine a continuation of power and would deprive the Democrats of a strong advantage which the success of the bill would give them.

" 'The Republic has too much confidence in the wisdom

and integrity of the Senate majority to credit reports that the bill will, or can be defeated by the Filley lobby.'

"That the school board mentioned in the foregoing publication was a public corporation created under the laws of this State and designated and entitled 'The Board of President and Directors of the St. Louis Public Schools;' that at the time of the said publication, the said corporation was in charge of and had the conduct and management of the affairs of the public schools of the city of St. Louis, and the plaintiff was, at the said time, the attorney of the said corporation; that in and by the said publication, the defendant charged and intended to have it so understood and believed that plaintiff then and there represented a corrupt combination of members and directors of the said public school corporation, designated in the said publication as the 'Filley Combine of the School Board;' also that plaintiff then and there was the leader of a corrupt lobby which was engaged in endeavoring to defeat a certain bill, then pending in the Senate of the General Assembly of the State of Missouri, designated in the said publication as the 'Civic Federation School Bill,' and whose purpose and object was, among other things, the repeal of the laws under which the corporation entitled the Board of President and Directors of the St. Louis Public Schools had been organized, and by virtue of which it enjoyed its powers and privileges as such corporation; and also, that the said lobby, so alleged to have then and there been under the leadership of plaintiff, was composed of contractors and persons designated as 'go-betweens,' by whom were meant persons who had been used and employed by plaintiff to approach and corruptly influence others, so that plaintiff would not be brought directly in contact with those thus approached and corruptly sought to be influenced, and who, thus designated, had unlawfully made and obtained large profits by reason of corrupt practices and

combinations made and carried on with the members of said school board corporation designated in said publication as the 'Filley Combine,' which said combinations and practices were in violation of the duties of and of the oaths of the said members as directors of the said corporation and as public officers of this State.

"That at the time of the said publication herein complained of, the term 'Filley,' as applied to a political combination or a combination of individuals for the purposes of controlling legislation, or otherwise, had come, in the said city, and elsewhere within the limit of the circulation of said newspaper, to be regarded, understood and known to most persons belonging to the Democratic party and to many persons belonging to the Republican party, as an opprobrious epithet as applied to an individual as a member of an alleged combination for political purposes, or any purposes whatsoever had come to be understood to mean, that the individual so charged with being a member of a 'Filley' combination was ready and prepared to resort to and would resort to improper, unlawful, and fraudulent practices in order to accomplish the result which was had in view by the combination to which he was so alleged to belong; that the individual from whom the appellation and term 'Filley' was derived by the defendant, was then and there reputed to be the leader and in control of the Republican party in the said city of St. Louis; that at the time of the publication complained of herein, a general municipal election was about to be held in the said city, which was and is referred to in said publication as the approaching election; that plaintiff was then and there and had, for years, as defendant then and there well knew, been a member and identified with the Democratic party in said city, and that accordingly, in printing and publishing the statement that 'for Democratic Senators to yield to the blandishments of a corrupt Filley

combine would be the hardest blow that could be delivered against the Democracy of St. Louis in the approaching election,' the said defendant then and there intended to have understood and believed and did in substance and effect falsely charge that plaintiff as a member of the corrupt 'Filley combine' and as a Democrat, was secretly and fraudulently working and endeavoring to accomplish the defeat or embarrassment of the Democratic party in said city, at the approaching municipal election, by bringing about, as the leader of a corrupt lobby composed of persons under the control of the individual designated as 'Filley,' the defeat of the so-called Civic Federation School Bill.

"That in and by that portion of the publication herein complained of, to-wit: The Republic has too much confidence in the wisdom and integrity of the Senate majority to credit reports that the bill will, or can, be defeated by the Filley lobby,' the defendant intended to have it understood and did in fact mean and charge that under the leadership of plaintiff the lobby designated as the 'Filley lobby' stood ready to corruptly influence, by bribery and other unlawful practices, a majority of the members of the Senate and of the General Assembly of this State so as to obtain the defeat of the said Civic Federation School Bill, and that the said lobby had given out and caused to be made reports to such effect to the detriment of the reputation of a majority of the members of such Senate for wisdom and integrity.

"That the said publication herein complained of in its meanings and innuendoes, its context and purposes, was maliciously made and caused to be made by the defendant of and concerning the plaintiff; that the same is false and known to be false to the defendant; that it was and is calculated to deprive him of public confidence, to expose him to public hatred, contempt and ridicule, and to deprive him of the benefit of

social intercourse, and that by reason of the said publication, he has been damaged in the sum of twenty thousand dollars, and that the further sum of ten thousand dollars should be assessed against said defendant by way of punishment for the malicious defamation of the plaintiff and to deter others from the perpetration of like offenses.

"Wherefore, the premises, the plaintiff asks judgment against the said defendant in the sum of thirty thousand dollars and for his reasonable costs."

The answer is as follows:

"Now comes the defendant and answering the petition of plaintiff herein, for its first defense, says:

"That it did publish the article set forth in the plaintiff's petition, and it further says that the matters and things in the said article contained are true.

"For further answer and defense defendant says: That at the time of the publication complained of, there was in the city of St. Louis a body known as 'The Board of President and Directors of the St. Louis Public Schools,' and that said board was charged with the conduct and management of the public school system of the city of St. Louis:

"That in the opinion of many of the citizens of St. Louis, the said board had become tainted with favoritism and corruption, especially in the conduct of the business interests of said school system, and as a means of reforming its evils and abuses it was generally believed that the said board should be abolished altogether.

"That to carry this public opinion into effect, there had been submitted to the General Assembly of the State of Missouri, and was pending before it at the time of said publication, a bill which had for its purpose the abolition of said board and the formation of a new board to be constituted upon a different plan in its stead.

"That said bill so pending as aforesaid, and especially in so far as the same provided for the abolition of the old board of president and directors, was generally approved by the citizens of the city of St. Louis, and did thereafter pass the said General Assembly and receive the sanction of the Governor of Missouri.

"That while the said bill was pending before the said General Assembly, the same was opposed by contractors and others who had theretofore been favored by the said old board in its administration of the school system of the city of St. Louis, and who were interested for personal, selfish and pecuniary reasons in defeating the said bill so pending before the Legislature, and in perpetuating against the will of the people of the city of St. Louis, despite the abuses which had grown about it and the disrepute which had come upon it, the old system of The Board of President and Directors of the St. Louis Public Schools; and a number of persons so interested, or their representatives, were present in Jefferson City while the Legislature was in session, as a lobby, to defeat, if possible, the said bill.

"That among the persons who were present at Jefferson City, while the said bill was pending, and opposing the same, was the plaintiff, Charles B. Stark.

"That he was interested to do so because he was at the time one of the retainers of the said board, being the attorney of said board at an annual salary, and thus interested personally, selfishly and pecuniarily, in continuing the then existing system of school government, despite its corruption and abuses, and despite the objection of the people of the city of St. Louis thereto.

"That said Charles B. Starks was known to this defendant to be a lobbyist, and had at previous sessions of the Legislature, for personal, selfish, pecuniary, and improper rea-

sons sought to influence legislative action with respect to the school system of the city of St. Louis, and was known to have theretofore resorted to practices as a lobbyist which were illegal in their method and corrupt in their tendency.

"That as a lobbyist theretofore, it was well known that the said Stark had not confined himself to the legal methods of public argument before committees of the Legislature or before the whole House, but had employed the sinister and illegal method of private interviews and personal solicitation with members and had while so acting as a lobbyist and personally interested through the expectation of a large pecuniary reward, suppressed the fact of this interest and had presented himself to members as a disinterested official who had only a public purpose to serve and only the public welfare to inspire him.

"That such practices had become so general as to constitute an enormous public abuse and regularly as the General Assembly of Missouri convened, it was attended by a large lobby, popularly known as the 'Third House,' whose members represented no public constituency, but were the mercenary agents of special interests and who yet without regard to the general welfare, for personal, selfish and pecuniary reasons by personal solicitations and persuasion and other methods legal, or illegal, as might be most convenient, attempted to promote or retard legislative action.

"That the defendant was, at the time, engaged in the publication of a daily newspaper known as 'The St. Louis Republic.'

"That as publisher of such newspaper, it was its right and duty to publish the proceedings of the Legislature of the State of Missouri and also to publish the facts with respect to the influences that were at work seeking to mould the action of such Legislature, and, especially, as the publisher of

one of the daily papers of the city of St. Louis, was it the duty of the defendant to inform its readers fully with respect to the course and progress of said school bill, and with respect to the means and agencies which were being employed to obstruct and defeat it.

"That the plaintiff being at the time of said publication personally and pecuniarly interested against said school bill, and being engaged, with contractors and others who were also personally and pecuniarily interested against said bill, in a lobby to prevent its passage, and the defendant believing, as it still believes and alleges the fact to be, that such lobby interference is a malign influence in public affairs and an illegitimate mode of affecting legislative proceedings and that the same is corrupt in its tendency and effect, it made the publication complained of, without malice and as a proper and legitimate comment upon the conduct of the plaintiff in respect of a matter of vital public interest.

"Wherefore, having fully answered, defendant prays to be dismissed with its costs in this case expended."

The reply is a general denial.

The issues were submitted to the jury under the following directions of the court:

"Gentlemen of the Jury: The plaintiff, Charles B. Stark, alleges that the defendant, Publishers George Knapp and Company, published of and concerning the plaintiff, the following article:

"'THAT LOBBY SETTLES IT.

"'Malign is a good word to apply to the influences working at Jefferson City to defeat the Civic Federation School Board Bill in the State Senate. Led by Attorney Stark, who represents the Filley combine of the school board, the lobby against the bill is composed of contractors and "go-betweens"

who have fattened on the corruption of the present system, and are working for a continuation of fat opportunities.

" 'For Democratic senators to yield to the blandishments of a corrupt Filley combine, would be the hardest blow that could be delivered against the Democracy of St. Louis in the approaching election.

" 'It would gain for the combine a continuation of power and would deprive the Democrats of a strong advantage which the success of the bill would give them.

" 'The Republic has too much confidence in the wisdom and integrity of the Senate majority to credit reports that the bill will or can be defeated by the Filley lobby.'

"And that the same is false and malicious and libelous.

"Under the Constitution of the State of Missouri, the jury, in cases like this, are empowered to determine under the direction of the court, the law and the facts, which means that in this case the jury may themselves determine whether the publication complained of is or is not a libel.

"For their information in determining this, the court declares that a libel is the malicious defamation of a person, made public by any printing or writing which tends to provoke him to wrath or expose him to public hatred, contempt or ridicule, or to deprive him of the benefits of public confidence and social intercourse—or, it may be said, a libel is a malicious publication expressed either in printing or writing tending to blacken the reputation of a man and expose him to public hatred and contempt or ridicule—or, a libel may be defined as a censorious or ridiculing writing made with a mischievous and malicious intent towards governments, magistrates or individuals.

"The court instructs the jury that by malice is not meant necessarily spite or ill-will—though an act done because of spite or ill-will, would be malicious, but is also meant the

doing of a wrongful act intentionally without just cause or excuse, and that, therefore, if the jury believe in this case that the article complained of was not true, and was a libel upon the plaintiff, then the law presumes that it was maliciously published.

"A man is presumed by law to intend what is the natural ordinary consequences of his acts, and if an article is published and is untrue, and has the effect of injuring the reputation of him of whom it is written, by exposing him to public hatred, contempt and ridicule, or affecting him as herein above described in the definition of libel, then the publisher is presumed to have intended that effect.

"In determining the question as to whether the article complained of was or was not libelous, you are to take the entire article into consideration and give it that plain, ordinary, usual, natural, interpretation which would be usually given to it by the general reader thereof. Neither the sense in which the plaintiff may have understood it, nor the meaning which the defendant may have contemplated, is to govern you in your determination. You are to look at it and regard it in the meaning in which it would ordinarily be accepted by the average man of whom it was intended.

"If, therefore, you believe that the article complained of or any part thereof, was untrue, as referring to the plaintiff, and was libelous, it being admitted to have been published by the defendant, your verdict will be for the plaintiff.

"If your verdict is for the plaintiff you will assess his compensatory damages at such sum as from the evidence and under the instructions you believe will fairly compensate him for the injury he has sustained by reason of said publication, and in determining what is such a fair compensation you may take into consideration the extent of said circulation of the defendant's newspaper at the time of the said publication

both in the city of St. Louis and elsewhere, as shown by the evidence, the general character of the publication and the probable effect, if any, of the said publication upon the reputation of the plaintiff considering his standing and repute in the  community at and prior to March 18, 1897, as shown by the evidence, the mortification, if any, to his feelings which plaintiff may have suffered by reason of the publication, the distress of mind, if any, which he may have suffered on account thereof, and considering all these matters, you may assess the compensatory damages of the plaintiff at such sum as in your opinion will be a fair compensation to him for the injury, if any, you believe he has suffered from the publication of the said article.

"In addition to compensatory damages, you may, if you think proper, under all facts and circumstances shown in evidence, assess in favor of the plaintiff, such further sum as exemplary or punitive damages or smart money, as in your judgment considering all the facts and circumstances in evidence in the case, you believe  ought to be assessed against the defendant by way of punishment for the act complained of and to serve as a warning to prevent the defendant and others from being guilty of a like act; and' in determining such damages, you may take into consideration the capital and resources of the defendant, as shown in the evidence, and the motive or purpose of the defendant in making the publication as you may find it from the evidence, and in determining the motive or purpose you may consider any information or reports, concerning or relating to the subject-matter of the alleged libel, which the defendant received before the publication complained of and on which you may believe it acted in good faith, and the meaning which you may believe from the evidence the defendant intended to convey by the article complained of and any other publication of the defendant

Vol 160 mo—35

shown in evidence, whether published before or after the publication of March 18, 1897.

"On the other hand, the defendant contends that the article complained of is true, and that it has the right to make the publication if made in good faith, and that it published the article without any malice as a proper and legitimate comment upon the conduct of the plaintiff in respect to a matter of vital public interest.

"As regards the truth of the article published, if you believe from the evidence that so far as it relates to the plaintiff, it was true, that is, that the statements as made herein of and concerning the plaintiff were true, giving to them their natural meaning as hereinbefore defined, then your verdict should be for the defendant.

"As regards the right of the defendant to make the publication you are instructed that a newspaper has no right to publish in a case like this an untruthful article of another. So far as plaintiff's actual or compensatory damages are concerned, it makes no difference what defendant's belief may have been in regard to the truth of the article or its good faith, or its motive or purpose.

"It had and has the right, as has every individual, to write on any subject, and thus it had the right to publish any matter pertinent and material to the pendency in the State Legislature of the Civic Federation School Bill, provided it acted in good faith and without malice, but it is responsible for all abuse of that liberty and that liberty is abused wherever it publishes of any one an untruthful or libelous article, except in certain instances of absolute privilege, among which this case is not to be classed.

"As regards the motive of the defendant or any malice or lack of malice in the publication, you have already been instructed as to what constitutes malice and when it is presum-

ed and as to its bearing and application in this case upon the question of punitive damages, or smart money, as it is sometimes called.

"To further enable you to decide the questions submitted to you in this case, the court instructs you that in the absence of evidence to the contrary the law presumes the reputation and character of a man to be good. That the Board of President and Directors of the St. Louis Public Schools had no right to engage any one to lobby for or against any bill in the Legislature, affecting in its provisions their terms of office, and to appropriate or expend any of the public funds under their control for such purpose, nor had any officer of theirs, as a representative of the board, the right, nor was it his duty in his official capacity, to lobby for or against any such bill or work for or against any such bill affecting their terms of office, and to receive public money of the school fund for expenses in such employment, and that any such conduct and appropriation of money or acceptance of the same under such appropriation is without warrant of law, is against the policy of republican form of government, and can properly be criticised, commented upon, and rebuked by any paper or individual in any appropriate and proper terms.

"For, while any individual is permitted and often is moved by duty to present by way of petition or public argument his views and opinions and reasons for or against any measure pending before the Legislature of the State, this right belongs to him as a constituent part of the sovereignty, and can not be employed by an individual acting officially, or by public officials while serving the people and entrusted only with certain duties, responsibilities and trusts. It is their duty to carry out the law within the limits of the powers conferred upon them and not otherwise to either persuade, direct, or force legislation, or attempt so to do in regard to

matters affecting their terms of office, or duties relating thereto.

"That a lobbyist is one who frequents the lobby or precincts of a legislature or other deliberative assembly with the view of influencing the votes of members, or who solicits or seeks to influence the votes of members, or seeks to influence their official action whether in the lobby of the legislature or elsewhere.

"The court further instructs you, that, if you believe from the evidence that any witness has willfully sworn falsely to any material fact, you may reject and disregard all of the testimony of such witness.

"In your verdict, if it be for the plaintiff, you will assess and state separately your finding as to compensatory damages and your finding as to punitive or exemplary damages; if your verdict is for the defendant you will merely state that you find issues in this cause in favor of the defendant."

The errors assigned for reversal will be noticed in the order of their assignment.

(1) The refusal of the circuit court on the trial to permit the plaintiff to introduce evidence of his good character prior to the publication of the alleged libel, in chief, and before any evidence whatever had been introduced by the defendant, is assigned as error.

In 1 Greenleaf on Evidence, (16 Ed.), pages 40, 41 and 42, it is said: "Because of the slight probative value of a party's character, and of its confusion of issues to little purpose, and for other reasons variously stated by different judges and not easy to disentangle or define, it has come to be generally accepted that the character of a party in a civil cause can not be looked to as evidence that he did or did not do an act charged . . . . . It is sometimes said that the plaintiff in an action for defamation charging him with crime may, upon plea of truth, use his good character as evidence in dis-

proof of the charge, on the theory that he is practically in the position of a defendant charged with crime; but this exception is generally repudiated." The authorities on both sides are cited in note 17, page 42.

In Townshend on Slander and Libel (4 Ed.), sec. 387, it is said: "It is a much vexed question whether in an action for slander or libel the plaintiff may, in aggravation of the damages he has sustained, introduce evidence of his good reputation prior to the publication complained of. On this point, as upon all others relating to proceedings in an action, we can do no more than call attention to the decisions upon the subject. Although it may be true that in an action for slander or libel, the reputation of the plaintiff is in issue, it is nevertheless true that, as a general rule, the reputation of the plaintiff is assumed to be good until the contrary is shown, and that unless some blot upon the plaintiff's reputation is set up as a mitigatory circumstance, or his reputation is otherwise assailed, he is not permitted for any purpose to introduce any evidence on the subject; thus, it has been held that evidence can not be given of the fairness of plaintiff's character (reputation) even where a justification is pleaded, unless attacked by the defendant. But held, also, that where the general issue only is pleaded, the plaintiff may give evidence of his good character." The authorities on both sides of this proposition are cited in notes 1 and 2 on page 646.

So far as we are advised, the question has never been passed upon directly by this court.

In Vawter v. Hultz, 112 Mo. loc. cit. 639, it was said: "In civil actions the character of neither party, until assailed, can be inquired into, 'unless it is put in issue by nature of the proceeding.' [Gutzwiller v. Lackman, 23 Mo. 168; Rogers v. Troost's Admr., 51 Mo. 470; Dudley v. McCluer, 65 Mo. 241.] It is so put in issue only in that class of cases such as

libel, slander, etc., in which its value is to be considered in assessing the damages."

In Dudley v. McCluer, 65 Mo. loc. cit. 243, it is said:

" 'Putting character in issue is a technical expression, which does not mean simply that the character may be affected, but that it is of particular importance in the suit itself as the character of plaintiff in an action of slander, or that of a woman in a suit for seduction.' [Porter v. Seiler, 23 Pa. St. 424.] In those excepted cases, character affects the amount of the recovery. The jury are, by law, permitted to consider it in assessing damages, and it is in that sense that it is said that 'the nature of the action puts the character in issue.' "

The rule to be deduced from the weight of authority, and recognized in this State, seems to be, that while proof of plaintiff's good character is not admissible in the first instance as evidence tending to prove that he was not guilty of the matters with which he is charged in the publication, it is so admissible as bearing upon the question of damages to be assessed therefor in the event that the jury should so find. As that question was never reached by the jury in this case, conceding that there was error in refusing this evidence, it is not reversible error.

(2) In the plaintiff's motion for new trial, error in the admission of evidence for the defendant is assigned as follows:

"The court erred in admitting incompetent evidence offered by the defendant in this, that the court, against the objection of the plaintiff, admitted the record, opinion of the court and other proceedings in State ex rel. Kelleher v. The Board of President and Directors St. Louis Public Schools, et al.; in this, that evidence was permitted in regard to the subject-matter of State ex rel. Rutledge v. Board of President

and Directors St. Louis Public Schools; in this, that the court admitted the evidence of Ittner as to the contract with Diedrich with the said corporation; in this, that the court permitted to be read the depositions of Dyer, Mabry, Vieth, Elsner, Sweaney, McMonigle, and Harrel, and parts thereof objected to by said plaintiff; that the court admitted the vouchers for expenses of March, 1897, and April, 1897, and evidence in relation thereto; and that the court permitted the examination of plaintiff as to the legislation in regard to the merchant's tax, which occurred in 1893."

The ground upon which it is contended here that the trial court erred in admitting this evidence of the defendant is that its plea of justification was not specific.

Where the defamatory matter complained of is in general terms, as that plaintiff is a murderer, thief, or other imputation, which is a mere conclusion or inference of facts, the particular facts relied upon warranting the inference charged, must be set forth specifically in a plea of justification, so that the plaintiff may be advised of the particular matter that he will be called upon to meet. But when the defamatory matter charged is itself specific, it is sufficient to allege generally that the charge is true. [Fenstermaker v. Tribune Pub. Co. 12 Utah, 439; Kuhn v. Young, 78 Tex. 344; McLaughlin v. Cowley, 127 Mass. 316; Dever v. Clark, 44 Kan. 745; Vanwyck v. Guthrie, 4 Duer (N. Y.), 268.]

"Justification on the ground of truth need not go further than the charge, and it is sufficient to justify so much of the defamatory matter as is actionable, or so much as constitutes the sting of the charge; it is unnecessary to repeat and justify every word of the alleged defamatory matter. It is sufficient if the substance of the libelous charge be justified." Townshend on Libel and Slander (4 Ed.), sec. 213.

The substance of the defamatory matter charged in this

instance was, that the plaintiff as the representative of a corrupt combine of the school board, and the leader of a lobby composed of contractors and "go-betweens," who have fattened on the corruption of the present system and are working for a continuance of fat opportunities, is a malign influence, working at Jefferson City to defeat the Civic Federation School Bill in the Senate. It would seem that this charge is sufficiently specific to advise the plaintiff of the particular matter he would be called upon to meet, and that a plea of the truth of that matter as alleged was sufficiently specific. But, be that as it may, the plaintiff is in no position to urge that objection against the answer in this court. The attention of the court below was not called to this or any other defect in the answer, by motion, plea, objection to the introduction of evidence thereunder, instruction, or even in the motion for a new trial, or its sufficiency questioned in any manner in that court. And it is now entirely too late to be urged as ground for reversal here. [Smiley v. St. L. & Han. Ry. Co., 160 Mo. 629; Adair v. Mette, 156 Mo. 496, and cases cited.]

(3) It is further contended that the opinion of this court in the Kellcher case, and the evidence in regard to the Rutledge case, ought to have been excluded on the objections made thereto on the trial. This evidence seems to have been admitted as bearing upon the question of punitive damages, as to which a wide field was opened by plaintiff by the introduction of a score of editorials from the defendant's newspaper. In view of which, we can not say it had no bearing upon that subject, which, however, the jury never reached in its deliberations. The objections made to this evidence, were that it was "incompetent and immaterial." If competent for any purpose it was admissible over such objections, which are general in their nature and save nothing in particular for

review; and we have uniformly held that in such case this court will not consider the objections, nor "look into the question to see or conjecture on what ground the evidence was objectionable." [St. Louis Pub. Schools v. Risley's Heirs, 40 Mo. loc. cit. 369; Bauer v. Franklin Co., 51 Mo. loc. cit. 206; Liggett v. Morgan, 98 Mo. 39; State v. Adams, 108 Mo. 208; People's Bank v. Scalzo, 127 Mo. 164; State v. Wright, 134 Mo. loc. cit. 418; Lumber Co. v. Rogers, 145 Mo. 445.] We find no error in the rulings of the court on the admission of evidence for which the judgment should be reversed.

(4) It will be observed, in the directions of the court, that after instructing the jury very fairly upon all the issues of the case, the court, to further enable the jury to decide the questions in the case, instructed the jury as follows:

"That in the absence of evidence to the contrary the law presumes the reputation and character of a man to be good. That the Board of President and Directors of the St. Louis Public Schools had no right to engage any one to lobby for or against or work for or against any bill in the Legislature, affecting in its provisions their terms of office and to appropriate or expend any of the public funds under their control for such purpose, nor had any officer of theirs, as a representative of the board, the right, nor was it his duty, in his official capacity, to lobby for or against any such bill or work for or against any such bill affecting their terms of office and to receive public money of the school fund for expenses in such employment, and that any such conduct and appropriation of money or acceptance of the same under such appropriation is without warrant of law, is against the policy of a republican form of government, and can properly be criticised, commented upon, and rebuked by any paper or individual in any appropriate and proper terms. For while any individual is

permitted and often is moved by duty to present by way of petition or public argument his views and opinions and reasons for or against any measure pending before the Legislature of the State, this right belongs to him as a constituent part of the sovereignty and can not be employed by an individual acting officially or by public officials while serving the people and entrusted only with certain duties, responsibilities and trusts. It is their duty to carry out the law within the limits of the powers conferred upon them and not otherwise to either persuade, direct, or force legislation, or attempt so to do, in regard to matters affecting their terms of office, or duties relating thereto. That a lobbyist is one who frequents the lobby or precincts of a legislature or other deliberative assembly with the view of influencing the votes of members, or who solicits or seeks to influence the votes of members, or seeks to influence their official action whether in the lobby of the legislature or elsewhere. The court further instructs you, that, if you believe from the evidence that any witness has willfully sworn falsely to any material fact, you may reject and disregard all of the testimony of such witness."

Of that part of these last directions commencing with the words "The Board of President and Directors of the St. Louis Public Schools" and ending with the words, "or duties relating thereto," the plaintiff bitterly complains. The only purpose of these additional directions was to assist the jury in making an intelligent application to the facts of the case, of those that preceded them. No serious objection can be found to the principle therein announced, and in view of the undisputed facts that the plaintiff was the salaried attorney of the school board, that he went to Jefferson City at the instance of some of its members, that the existence of the board as then constituted and his tenure of office were threatened by the Civic Federation Bill then pending before the Senate,

that he spent two weeks in lobbying against the measure, and that his expenses during such service was demanded of and paid by the board out of the public school moneys, and that on a former occasion he had in like character performed like services in regard to another bill, for which he presented a demand against the corporation for several thousand dollars, we can not say that the court committed error in advising the jury of those principles in this case. Taken as a whole we think the directions placed the case fairly before the jury. And finding no reversible error, the judgment of the circuit court should be affirmed, and it is accordingly so ordered.

All concur.