SAMUEL SIMONS, Appellant, v. ISAAC PETERSBERGER et al., Appellees.

**LIBEL AND SLANDER:** Privileged Communications—Financial Condition of Another. Information concerning a merchant's financial condition, properly obtained from said merchant by an agent of a credit-rating company, and in good faith and without malice communicated by said agent to his principal, with substantial truthfulness, is privileged.

*Appeal from Scott District Court.*—F. D. LETTS, Judge.

NOVEMBER 17, 1917.

ACTION for damages. By direction of the court, the

jury returned a verdict for the defendant.    Plaintiff appeals. The facts are fully stated in the opinion.—*Affirmed.*

*John C. Higgins* and *Sharon & Harrison,* for appellant.

*Lane & Waterman* and *Isaac Petersberger,* for appellees.

STEVENS, J.—This case was before this court upon a former appeal.   See same title, 171 Iowa 564.   The interpretation there placed upon plaintiff's petition, which is somewhat difficult to understand, was as follows:

"The petition is somewhat obscurely stated; but the theory of the case presented by plaintiff seems to be that the defendant Petersberger, an attorney at law in Davenport, falsely and maliciously reported to the Jewelers Board of Trade that plaintiff was in financial straits, and that this false and misleading statement was by the Board of Trade sent out to the wholesale dealers in that line of business, thereby injuriously affecting plaintiff's credit and standing as a business man; and that, in the further pursuance of said wrongful purpose to injure plaintiff and to obtain his outstanding bills for collection, Petersberger and the Credit Adjustment Company, a corporation organized and controlled by him, falsely led plaintiff to believe that they held or controlled practically all his outstanding indebtedness, and, by threatening to force him into bankruptcy, induced him to execute an instrument surrendering all his property to the Credit Adjustment Company, and to further pay to said company the sum of $30 in money."

Adopting the above as the correct meaning thereof, what is said herein will be with this in view.   The defendant Petersberger admits the writing of the letters complained of, and alleges that they were written in good faith, were true, were based upon information furnished him by the plaintiff, and that, at the time of the writing of said letters, defendant was acting as the agent of the jewelers' board of trade, and

that same were privileged communications between the defendant and his said principal. Plaintiff had, prior to the time in controversy, been for several years engaged in the jewelry business in Davenport, Iowa, and, in the course of said business, had become indebted in a considerable sum to numerous wholesale creditors, and to a bank in said city upon a note for $500.

On or about the 31st of March, 1910, the defendant, who is an attorney at law, practicing his profession in said city of Davenport, presented to plaintiff for payment a claim of $357.29 in favor of Zimmern, Rees & Company, a creditor of plaintiff's, which had been sent to him for collection by some New York collection agency. Plaintiff was unable to pay the same, and sought an extension of time in which to do so. He testified that defendant informed him—but whether before or after the information hereafter referred to had been obtained does not appear in the record—that he represented the jewelers' board of trade of Chicago, an institution organized somewhat on the plan of the Dun and Bradstreet companies, for the purpose of obtaining and furnishing information to certain wholesale dealers and jobbers regarding the financial condition of retail jewelry merchants and others. The plaintiff at this time exhibited to the defendant Petersberger his books of account, and made a full statement of his financial affairs; whereupon, and on the same day, defendant wrote the following letter to the jewelers' board of trade:

"Davenport, Iowa, 3-31-10.

"Re Simons Jewelry Co.

"Jewelers' Board of Trade,

"609 Columbus Bldg.,

"Chicago, Ill.

"Gentlemen:

"In presenting a claim of $357.29 in favor of Zimmern, Rees & Co., which we received for collection from our New

York correspondents, and in endeavoring to force settlement on same, we had occasion today to investigate the condition of the above concern, which is unincorporated, consisting of Samuel Simons, who has been a resident of this city for about six years.

"He states his absolute inability to take care of this account at present, due to business depression and other conditions locally, which were fully reported to you by your Mr. Henry M. Johnson. In making our investigation of debtor's affairs, we ascertained that they were indebted to the amount of about $4,500, $500 of which is due to a local bank. They have assets as follows: Stock and merchandise $4,533.65, as of date January first; accounts received, $717, and fixtures, $1,800; $900 unpaid and unsecured, upon which there is two years' time.

"In addition, there is a lease on the premises at a monthly rental of $87, and the lease runs four years. The annual business for the past five years is as follows: 1905, $3,957; 1906, $5,962; 1907, $6,054; 1908, $5,695; 1909, $4,597. The expenses in connection with the store is about $175 per month, and debtor's personal and household expenses amount to about $125. Debtor has pledged his life insurance to secure additional assistance, but in our opinion has now reached a state where, in order to conserve the assets and allow him to continue, which he desires to do, some concerted action is necessary on the part of the creditors. The Chicago parties interested are as follows: Rettig, Hess & Madson, 72 Madison St., Chicago, $73.12; Sproehnle & Co., Hayworth Bldg., $1,011.75; Depress, Bridges & Noel, 103 State St., $281; Emil Braude & Co., Hayworth Bldg., $311.

"We are also writing a letter to the New York office, giving them the same information as herein contained, together with a list of the New York creditors.

"We are in a position to represent you in this matter, and upon receipt of claim, we will devise some definite plan

to carry out the idea herein contained, and any suggestion you care to make.

> "Yours truly,
>
> "Isaac Petersberger."

He also wrote a letter to the same concern at its New York address, giving it a list of plaintiff's New York creditors, and stating that the writer was in a position to represent it in the interest of plaintiff's creditors.

It is claimed by appellant that the statement that he was paying $87 per month rent was untrue; that, while he was paying that amount for the building, he leased a part thereof for $12 per month, thereby reducing his actual expenses therefor to $75 per month; that he did not, in fact, pledge his life insurance, but, shortly after entering into business in Davenport, deposited the same with the company issuing it, and borrowed small amounts upon two different occasions thereon; and he further contends that he was wholly solvent, and that, by the use of the following language, "Debtor has pledged his life insurance to secure additional assistance, but in our opinion has now reached a stage where, in order to conserve the assets and allow him to continue, which he desires to do, some concerted action is necessary on the part of the creditors," defendant misrepresented the true financial condition of plaintiff, and induced his creditors to immediately demand payment of their accounts, with which demand he was unable to comply.

Some time later, the exact date not appearing, plaintiff made to his creditors a full statement of his financial condition. This statement showed total liabilities of $5,574.55, and assets, which included store fixtures, of $6,682, showing an excess of assets over liabilities of a trifle over $1,100. The jewelers' board of trade, immediately upon receipt of defendant's letter, notified each of plaintiff's creditors thereof, stating the financial condition of plaintiff to be sub-

stantially as set forth in defendant's letter, and in the subsequent statement sent out by plaintiff. At the same time, a letter was written by it to the plaintiff, containing a substantial restatement of the information obtained from the defendant Petersberger. Appellant claims that the defendant Petersberger, in obtaining the information therein contained, and writing the letter above set forth, was actuated by malice, and for the purpose of destroying the credit of the plaintiff, and to obtain the accounts of creditors for collection for his own profit and benefit. Plaintiff further claimed that none of his creditors were crowding him, and that he was able to buy goods on the market without difficulty; that, while his assets did not greatly exceed his liabilities, his business had grown rapidly, and he required but a little time in which to pay the debts; and that, notwithstanding the adverse conditions under which he has been compelled to carry on his business since the transactions above referred to, he has paid his creditors in full; but that he has been compelled to receive goods on consignment, because of the loss of his credit with wholesale concerns.

Some time after the letters were written, plaintiff claims that the defendant sought to induce him to convey all of his property to the Credit Adjustment Company, a corporation owned, managed and controlled by the defendant Petersberger, for the benefit of his creditors, said agreement to be effective only upon the placing of the claims of 75 per cent or more of plaintiff's creditors with defendant for collection, and the agreement to pay defendant 1½ per cent of the aggregate amount due said creditors for services as trustee. This instrument is dated May 20, 1910. Defendant Adjustment Company did not take possession under said agreement. It is admitted by plaintiff that, before signing the same, he consulted an attorney, and signed in pursuance of his advice. Suits were brought against plain-

tiff by defendant on some of the accounts or notes due plaintiff's creditors. The claims upon which suit was brought, however, were paid.

The information upon which defendant based the letter in question was obtained directly from the plaintiff and from an inspection of the books kept by him. At the time, plaintiff knew that defendant was a lawyer, having in his hands for collection a claim of a substantial amount in favor of one of his creditors, which he was unable to pay. Whatever information he furnished defendant was voluntary, and doubtless upon the belief that a frank statement of the growth of his business since he went to Davenport, and of the true facts respecting his liabilities and assets, would induce the creditor in question, and probably other creditors, to refrain from urging payment of their claims, and further inspire their confidence in his ability to pay. This information appears to have had the opposite effect, and, instead of convincing his creditors that he was wholly solvent, appears to have convinced them that his financial situation was unfavorable. If the creditors were induced to present their claims for payment by the statement of defendant of plaintiff's true financial condition, the defend- would not be liable; if, however, defendant's letter contained matters not reasonably necessary to a truthful and accurate statement of the information derived by him from plaintiff or other reliable sources, or of a nature intended to serve some personal end, then the character of such statements and the purpose of defendant in writing them, become material. The facts stated in defendant's letter were admitted by plaintiff to be substantially correct, except the suggestion of defendant that plaintiff had reached the stage where it would be to the advantage of creditors to make some arrangement to conserve his assets and allow him to continue in business, as he desired to do.

Letters from creditors introduced in evidence tend to confirm the suggestion that they were influenced by the indicated financial condition of plaintiff, rather than other statements of defendant's; although the jewelers' board of trade, in its letter to plaintiff's creditors, repeated the substance of defendant's statement in regard to the pledging of life insurance and the importance of concerted action among the creditors.

Plaintiff, after the execution of the agreement above referred to, visited his creditors, explained to them his financial condition, and time appears to have been allowed him within which to pay his indebtedness, and he was enabled to continue in business; but he claims he could only obtain goods on consignment.

Defendant Petersberger claims that he was the attorney and correspondent at Davenport of the jewelers' board of trade, and that a part of his duties were, apparently, to report facts coming to his knowledge affecting the credit or financial standing of merchants engaged in handling jewelry and articles of like character. A witness connected with the jewelers' board of trade at Chicago testified that defendant was its local correspondent at Davenport, and that the action taken by the former was upon the information furnished by him.

Many organizations similar in character to the above exist in various cities of this country. The purpose of their organization and methods of acquiring information respecting the financial condition of retail merchants and others are well known. It is earnestly claimed on behalf of the defendant that all of the matters contained in his letter were privileged; that he had a right, and it was his duty, as the agent, representative or correspondent of the jewelers' board of trade, to furnish the information in question. It is not claimed, however, in this case that the letter was written in answer to an inquiry soliciting information respecting the

financial affairs of plaintiff. The courts are not harmonious on the question as to the extent to which communications from correspondents in answer to inquiries respecting the financial condition of merchants or voluntary reports by such correspondents in the line of their duty as such are clothed with privilege. The Supreme Court of Wisconsin, in *State ex rel. Lanning v. Lonsdale,* 48 Wis. 348, held that such report in the hands of the agency was so far privileged that its contents may be lawfully communicated confidentially to subscribers seeking information upon that subject, if done without malice and in the belief of the truth thereof. To the same effect, see *Locke v. Bradstreet Co.,* 22 Fed. 771; *Erber & Stickler v. R. G. Dun & Co.,* 12 Fed. 526.

The rule as adopted by the Supreme Court of Idaho in *Pacific Packing Co. v. Bradstreet Co.,* 139 Pac. 1007, was as follows:

"As for the contention that these reports on the financial standing of business concerns are privileged, we are unable to give to such a doctrine the sanction of the court. We agree that some courts have so held, but we do not believe it to be a sound or just rule, and it would certainly be demoralizing to business, and open a ready and safe way for the unscrupulous, the blackmailer or grafter, to ruin the business standing and credit of an individual or corporation at pleasure, and without recourse. The only safe and just rule, either in law or morals, is the one that exacts truthfulness in business as well as elsewhere, and places a penalty upon falsehood, making it dangerous for a mercantile, commercial or any other agency to sell and traffic falsehood and misrepresentation about the standing and credit of men or corporations. The company that goes into the business of selling news or reports about others should assume the responsibility for its acts, and must be sure that it is peddling the truth. There cannot be two standards of right, nor two brands of truth, one for moralizing and one for

business.   *   *   *   If a mercantile agency can safely make false reports about the financial standing and credit of the citizen and destroy his business, it can then take the next step with equal impunity, and destroy his reputation, leaving him shorn and helpless."

The following recent cases hold that no privilege attaches to a report issued by a mercantile agency to its subscribers generally, or to those who have no interest in the standing of the person covered by the report: *Bohlinger v. Germania Life Ins. Co.*, (Ark.) 140 S. W. 257; *Denney v. Northwestern Credit Assn.*, (Wash.) 104 Pac. 769. See also *Hayes v. Press Co.*, (Pa.) 18 Atl. 331; *Ukman v. Daily Record Co.*, (Mo.) 88 S. W. 60; *Giacona v. Bradstreet Co.*, (La.) 20 So. 706; *Mitchell v. Bradstreet Co.*, (Mo.) 22 S. W. 358; *Dun v. Weintraub*, (Ga.) 36 S. E. 808.

The Supreme Court of Arkansas, in *Bohlinger v. Germania Life Ins. Co.*, supra, referring to the privilege to be accorded communications between principal and agent, stated the rule as follows:

"Communications made by a principal to an agent, or by an agent to a principal, relative to the subject matter of the business of the agency or employment, and containing information or giving direction relative thereto, fall within the class of privileged communications, although they contain defamatory matter concerning a third person. If the statements are published by one in good faith to another, in order to protect his own interest or to protect the corresponding interest of the other in the matter in which both parties are concerned, then such statements are privileged, when the subject matter of the publication makes it reasonably necessary, under the circumstances, to accomplish the purpose desired."

In *Nichols v. Eaton*, 110 Iowa 509, the court said:

"One may make a publication to his servant or agent,

without liability, which, if made to a stranger, would be actionable. In the protection of his own interests, one may make a communication to his agent or servant without subjecting himself to liability, unless he exceeds the privilege and does more than his duty or interest demands. * * * The statement must be such as the occasion warrants, and must be made in good faith, to protect the interests of the publisher and the person to whom it is addressed. A communication by a principal to his agent touching the business of the agency is not actionable, without proof that the principal was actuated by malice towards the person to whom the communication relates."

See *State v. Haskins*, 109 Iowa 656.

As above indicated, the information communicated by the defendant to the jewelers' board of trade was obtained by the defendant directly from the plaintiff, at a time when, as attorney for one of plaintiff's creditors, he was demanding payment of an account for a substantial amount which plaintiff admitted that he was, at the time, unable to pay. It would seem as though plaintiff's credit, if of the character claimed by him, was obtained without knowledge on the part of his creditors of his true financial condition, which, as indicated, was of doubtful solvency. Whether the communications in question were qualifiedly privileged or not under the proper rule applicable to such reports, the right of defendant, as the representative or agent of the jewelers' board of trade, to make truthful reports thereto respecting the financial condition of merchants in the city of Davenport, for the purpose of enabling it to furnish reliable information to its patrons, is not open to doubt. He was bound, however, in the performance of such service, to act in good faith, without malice, and for the purpose of furnishing truthful and reliable information. Newell on Slander & Libel (3d Ed.), Section 587; Townshend on Slandel & Libel (4th Ed.), Section 241-a. What was said in the

letter touching on the ability of defendant to handle accounts, and indicating a desire that creditors favor him therewith, was confidential in character, and does not appear to have been communicated to plaintiff's creditors. It is material only in so far as it tends to throw light upon the motives and purposes of defendant in writing the letter to the mercantile agency. What was therein said as to the importance of concerted action among creditors was, at most, only an expression of opinion, which, so far as the record shows, may well have been based wholly upon the information obtained from plaintiff.

We are unable to reach the conclusion that the defendant exceeded his legal rights in writing the letter and furnishing the information to the jewelers' board of trade, for which it appears he was agent and correspondent at Davenport. The claim which defendant presented to plaintiff for payment appears to have been received by him in an entirely proper manner, and the presentation and demand for payment thereof were in accordance with the usual method of handling matters of like character. The statement of his financial condition to defendant certainly did not indicate that plaintiff was in fact entitled to extensive credit. However, it appears that his business had grown in value from year to year, and that he had increased his stock, and he is not shown to have been dilatory in paying his accounts, or that same had previously been placed in the hands of attorneys for collection. The fact that defendant solicited that claims against plaintiff be sent him for collection does not in itself show that he was proceeding without due regard to the interest or welfare of appellant. In a subsequent letter, written a few days after the letter complained of, defendant used the following language:

"We assure you that we are unalterably opposed to bankruptcy proceedings in any adjustment matter, except

in cases of fraud, which element does not enter into this matter."

There is nothing in the record from which it could be inferred that defendant acted with malice or in bad faith toward plaintiff in respect to any of the matters complained of, or that he did not truthfully represent to the commercial agency the information furnished him by appellant, except that he omitted mention of the $12 rental received from subletting a portion of the building, and stated that plaintiff had pledged his life insurance policy for further assistance, instead of stating that same had been previously deposited with the company as security for a loan.

That plaintiff was able to purchase goods before the facts regarding his financial condition were brought to the attention of his creditors would not entitle him to recover damages of the defendant if a truthful statement thereof by him to them resulted in serious impairment or loss of his former credit. Defendant certainly had a right to rely upon the truth of the statements furnished him by plaintiff, and to communicate them to his principal.

In the former opinion filed in this case, reference was made to a check for $30 which plaintiff gave to defendant at the time of the execution of the trust agreement. The court below required said amount to be deposited with the clerk, which the record shows was done before motion to direct a verdict was sustained.

Without further review of the testimony or citation of authorities, we reach the conclusion that the trial court did not err in sustaining defendant's motion and directing the jury to return a verdict in his favor, and the judgment rendered thereon is—*Affirmed.*

GAYNOR, C. J., WEAVER and PRESTON, JJ., concur.