THE STATE OF IOWA, Appellee, v. E. W. CONABLE, Appellant.

1. **Libel**: INDICTMENT : CHANGE OF VENUE. The defendant, an editor of a newspaper, was indicted upon a charge of criminal libel, based upon articles published in his paper, during a political campaign, charging a political opponent, who was a member of congress, and a candidate for re-election, with gross misconduct in office. An application for a change of the place of trial to a county outside of the congressional district, upon the ground of prejudice, based upon the facts above stated and the further facts, that all of the counties in the district were "largely democratic," the political party of the subject of the alleged libel, and that juries in those counties would be apt to be made up chiefly, if not wholly, from members of that party, was overruled by the district court. *Held*, no error ; that the allegation in the defendant's petition, that the several counties in the district were "largely democratic" warranted the inference, in the absence of a showing to the contrary, that the political contest in the district was not sufficiently close to cause general bitterness or excitement as a result of the publication of the alleged libelous matter.

2. ———— : ———— : JUSTIFICATION : PLEADING. Where, in an indictment for libel, the libelous matter therein alleged to have been published by the defendant is sufficient to constitute the offense, it is not necessary that the indictment negative facts which are mere matters of defense.

3. ———— : EVIDENCE : CONTEMPORANEOUS PUBLICATIONS. Upon a trial under an indictment for libel based upon a specific portion of an article published during a political campaign concerning a candidate for office, the balance of such article and other disparaging articles published by the defendant during the same campaign, and concerning the same candidate, though not of a libelous nature, may be given in evidence by the state, if, taken in connection with the alleged libel, they will assist in determining the motive with which the publication was made.

4.  ——— : ———.  The libelous matter, upon which the indictment
was based in this case charged a candidate for office with an
agreement to sell an appointment to an office supposed to be under
his control if elected, but the other party to the agreement was not
named in the indictment.  *Held*, that the person subsequently
receiving such appointment, upon the recommendation of such
candidate, although not the person with whom the defendant had
charged the agreement had been made, might be permitted to tes-
tify upon the trial that he never gave, nor offered to give, anything
to secure the appointment, as tending to show that the charge con-
tained in the alleged libel was untrue.

5.  ——— : ——— : CONTENTS OF LOST LETTER.  After proof of the loss
of a letter received by the defendant, in company with an affidavit to
the facts charged in the alleged libelous article, the defendant pro-
posed to show the contents of such letter to be, that the writer had
investigated the case, and was satisfied that the facts set out in the
affidavit were true, but there was no ruling upon the offer of such
proof, nor any effort to introduce the evidence after making the
offer.  *Held*, that, while the defendant would have been entitled to
prove the contents of the letter as stated, no error could be predi-
cated upon the refusal of the district court to admit secondary evi-
dence of such letter before defendant's statement of what he
expected to prove thereby.

6.  ——— : ——— : MALICE.  Upon cross-examination the defendant
was asked if he had not formerly supported the subject of the
alleged libel for office ; also, whether he had not solicited his sup-
port for a particular office ; to both of which questions the defend-
ant objected as being incompetent and immaterial.  *Held*, that, as
defendant's publication of the libel may have been prompted
through disappointment in not receiving the coveted office, proof of
the facts sought to be elicited was proper as tending to show malice
on the part of the defendant.

7.  ——— : VERDICT: SUFFICIENCY OF EVIDENCE.  While the evidence
in this case as to probable cause and good faith is such that the
jury might well have found the alleged libelous article privileged
within the rule heretofore announced by this court, and the evi-
dence tends to show that the defendant believed the same to be
true, yet the evidence being conflicting upon the question of the
motive of the defendant in making such publication, the court can-
not say that in finding the defendant guilty, as charged, the jury
abused the discretion which the law gives them.

*Appeal from Clinton District Court.*—HON. W. F.
BRANNON, Judge.

SATURDAY, OCTOBER 11, 1890.

THE defendant was convicted of the crime of libel, and was adjudged to pay a fine of fifty dollars and costs. From that judgment he appeals.

*Walsh & Sutton* and *P. B. Wolfe*, for appellant.

*John Y. Stone*, Attorney General, *A. R. McCoy*, County Attorney, and *L. A. Ellis*, for the State.

ROBINSON, J.—The indictment on which defendant was tried and convicted is as follows: "The grand jury of the county of Clinton, in the name and by the authority of the state of Iowa, accuse E. W. Conable of the crime of libel, committed as follows: The said E. W. Conable, on the third day of November, A. D. 1888, in the county aforesaid, being a person of an envious, vicious, evil and wicked mind, and wickedly, maliciously and unlawfully contriving and intending as much as in him lay to injure, oppress and vilify the good name, fame, credit and reputation of Walter I. Hayes, a citizen of the state of Iowa, and at that time, and now, a member of the fiftieth congress of the United States of America for the second congressional district of the state of Iowa, and at that time a candidate for re-election as a member of the fifty-first congress of the United States from said district, and to bring him into contempt, infamy and public hatred, and to deprive him of the benefits of public confidence, and to defame, asperse, scandalize and vilify the character of said Walter I. Hayes, and to insinuate and cause it to be believed that the said Walter I. Hayes had been guilty of gross misconduct in his said office of member of congress as aforesaid, and that he had, as such congressman, corruptly received money, or attempted so to receive it, in consideration of recommending some person for appointment as postmaster at Wilton, in said congressional district, and that he was thereby an unfit person to be re-elected to said office, did unlawfully and maliciously, wickedly and scandalously, compose, write, print and publish, and did cause and procure to be composed, written, printed

and published in a certain so-called public newspaper entitled the *Clinton Morning News* a certain false, wicked, mischievous, and scandalous libel of and concerning the said Walter I. Hayes, and of and concerning his administration of the duties of his said office, while in the performance thereof, which said wicked, malicious, scurrilous, false, mischievous and scandalous libel contained the following, to the terms following :

" 'THE ATTEMPTED SALE OF THE WILTON POSTOFFICE.'

" 'A great deal of discussion has been indulged in of late, through the second district, and especially in Muscatine county, regarding an alleged attempt on the part of Congressman Hayes [ meaning Walter I. Hayes ] to sell the Wilton, Muscatine county, postoffice for five hundred dollars. It is claimed there are several witnesses to the transaction, and no doubt there are [meaning there were witnesses to a transaction in which said Walter I. Hayes attempted to corruptly sell the position of postmaster at Wilton, in said congressional district ]; but for fear that an exposure would have a damaging effect on the Muscatine, democratic county ticket, those who hold the proofs of guilt [ meaning guilt upon the part of said Walter I. Hayes in selling or attempting to sell the postoffice at Wilton ], in the shape of correspondence, etc., are reticent about giving the evidence to the public. But the facts are generally known, and are the subject of universal comment among Muscatine citizens. It is not at all strange that Hayes should traffic in matters of this kind. It would not be because he possessed any conscientious scruples against doing such a thing that he would refrain, but simply for fear of being found out. In the case at hand, however, he seems to have given little thought as to consequences, trusting, no doubt, to his ability to bulldoze the thing through. The five hundred dollars once in his pocket [ meaning that said Walter I. Hayes had received or attempted to obtain five hundred dollars for a sale of the postmastership of said Wilton ], then he would trust to luck for means wherewith to deceive the people.

That there are dozens of men in Muscatine county who have seen evidence that would convict Hayes of attempting to sell the Wilton postoffice, there is not a shadow of doubt. [Meaning that said Walter I. Hayes had actually in fact attempted to sell the postmaster-ship of said Wilton.] Voters of the second district, is this [meaning said Walter I. Hayes] the sort of men you want to represent you in congress? Is it creditable to you, democrats, to assume the responsibility of placing so corrupt an official [meaning said Walter I. Hayes] in a high office of honor and trust? Can you afford to let the stigma rest on you of sending such a man [meaning said Walter I. Hayes] to congress, knowing that he is wholly unworthy, and has grossly betrayed the confidence you have reposed in him? [Meaning that said Walter I. Hayes had, as a member of congress, as aforesaid, grossly betrayed his position, and corruptly sold, or attempted to sell, the postmaster-ship at said Wilton.] Can you afford to do this? Look at the matter squarely in the face, and then ask your-selves if you can afford to do that which would reflect discredit and dishonor on each one of you, individually, who casts a vote for Walter I. Hayes for congressman. We have more faith in the integrity of the great majority that compose the democratic party of the second district than to think for a moment that that majority desires to be represented by political corrup-tionists and traffickers in the confidences of the people and the spoils of office. [Meaning that said Walter I. Hayes was politically corrupt as a member of congress, a trafficker in office.] Gentlemen, it is for you, for you, to say, on Tuesday next, whether you desire an honest or a dishonest man to represent you in congress.'

"And the grand jury aforesaid, upon their oath, do further present that, at the time the said E. W. Conable so wrote, printed and published the said false, scurrilous, scandalous and malicious, defamatory libel, the same was false, against the form of the statute in such case made and provided, and against the peace and dignity of the state of Iowa."

It is shown that the matter quoted in the indictment was written by defendant, and printed and published by defendant as alleged, and that, at the time of publication, Walter I. Hayes was a member of congress from the second district, and was a candidate for re-election. The verdict of the jury was in words as follows: "We, the jury, find the defendant guilty; and we also unanimously recommend him, the defendant, to the charitable consideration of the court."

I.    The defendant pleaded not guilty to the indictment, and, on the twenty-first day of January, 1889, filed a petition, supported by affidavits, for a change of the place of trial to some county outside the second congressional district. The grounds for the change, as stated in the petition, were substantially as follows: That the alleged libel was written and published during the political canvass for the election of congressman from the second district; that Hayes was a candidate for re-election on the democratic ticket, and that his competitor was a republican; that the matter charged to be libelous was published from time to time during the campaign, and was of a political nature; that Clinton county, and all other counties of the second district, were largely democratic, and that, owing to the prejudice and excitement against him in these counties, he did not believe that he could obtain a fair and impartial trial therein. The petition was supported by the affidavits of forty-one persons, and was resisted by the counter-affidavits of forty-four persons, which alleged, in substance, that there was no excitement in Clinton county in regard to the suit, and no prejudice which would prevent, in the slightest degree, a fair and impartial trial of the defendant, and that, so far as there was any feeling, it was in favor of such a trial. On the showing thus made the petition was overruled, and of that action defendant now complains.

It was the duty of the district court, in the exercise of a sound discretion, to decide the matter of the petition, when fully advised, according to the very right of

1. LIBEL: indictment: change of venue.

it. Code, sec. 4374. The fact that a large majority in each of the counties .comprising the second congressional district were of the same political party as Congressman Hayes, and that, as a consequence, the juries in Clinton and other counties would be apt to be made up chiefly if not wholly from members of that party, would not entitle defendant to a change of the place of trial. Had it been shown that great political excitement was caused, and much party bitterness engendered, by the campaign, and that these had not passed away at the time the application was made, such facts might well have been considered by the court in ruling upon the petition. A partisan inflamed with the excitement and prejudices of a closely contested political campaign, and influenced by a strong desire that the principles and candidates of his party shall be vindicated, could scarcely be expected to judge the political acts of a political opponent with the fairness and impartiality which justice and the law demand. Even though he sincerely desired to do exact justice, he might be easily, though unconsciously, influenced in his decision by the passions and desires of those about him. It would be most unjust to require a person to submit to a trial for a *quasi* political offense at the hands of political opponents, under the circumstances suggested. But, in this case, it was not shown that the contest for congressman was either close or exciting. The petition shows that the several counties of the second district were "largely democratic," and we are justified in inferring, in the absence of a showing to the contrary, that the contest was not sufficiently close to cause general bitterness or excitement. There is no showing that the discretion which is lodged in the district court was abused by denying the application for a change of the place of trial.

II. After the ruling on the petition, the defendant withdrew his plea of not guilty, and filed a demurrer to the indictment in words as follows: "Comes now said defendant and demurs to the indictment for the following reasons: *First.*

2. —: —:
justification:
pleading.

Said indictment shows on its face that the article therein contained is a privileged communication, and it nowhere alleges that the said defendant did not believe the same to be true, or that he had no reasonable grounds for believing the same to be true. .That said indictment states no crime as charged. *Second.* That said pretended indictment shows on its face that the entire article is not contained therein as published, and that the remaining portions of said article, so omitted in said pretended indictment, are qualifying to the part so alleged, the entire article showing upon its face, when taken as a whole, not to be libelous." The demurrer was overruled.

The appellant contends that the matter set out in the indictment, and alleged to be libelous, was privileged, and, in order to make out a case, it was necessary for the state to allege that the matter was false, and that defendant did not, and had no reasonable cause to, believe it to be true. The indictment charges that the matter in question was false, and that it was written and published by defendant maliciously, wilfully and for an unlawful purpose. If the matter was privileged as claimed, that was a matter of defense which the defendant was entitled to prove. If the averments of the indictment are true, then defendant is guilty of the crime charged, unless, by reason of exceptional circumstances, he was justified in composing and publishing the alleged libel. But, as a general rule, it is not necessary, even in the case of statutory exceptions, for the indictment to show that the accused does not come within the provisions of the exception. Wharton, Crim. Pl. & Pr., sec. 238; 10 Amer. & Eng. Encyclopedia Law, 578; *State v. Stapp*, 29 Iowa, 551. Nor does the indictment show on its face that the alleged libel is privileged matter. If it had been true in fact, the defendant would not have been authorized to publish it for that reason alone. It must have been published with good motives and for justifiable ends. Code, sec. 4099. The indictment charges that the motives were bad, and the ends desired to be accomplished unlawful.

The second ground of the demurrer does not seem to be relied upon by defendant, and is not well founded. In our opinion the ruling on the demurrer was correct.

III. The court permitted the state to introduce in evidence the entire article. from which the extract set out in the indictment was taken. It also permitted the introduction in evidence of other articles published by the defendant at various times during the campaign of the year 1888. We think they were properly admitted in evidence as bearing upon the question of malice on the part of defendant. They spoke disparagingly of Congressman Hayes and of his candidacy, and, considered alone, may not have been libelous, or even improper, but, taken in connection with the alleged libel, they indicate a feeling on the part of the defendant which might aid the jury in determining his real motives in pursuing the course he did. It was for the jury to determine their value.

3. ——: evidence: contemporaneous publications.

IV. Appellant complains of the ruling of the court in permitting the person who was appointed postmaster at Wilton on the recommendation of Congressman Hayes to testify in substance and effect that he never gave, nor offered to give, anything to secure the appointment. It is said, that the person who so testified was not the person who was the party to the alleged corrupt agreement to secure the place. But the indictment does not show who that party was, and the testimony was proper to show that the charge contained in the alleged libel was untrue.

4. ——: ——.

V. Before the defendant published the article complained of he received information from various sources, which, he claims, led him to believe that the charges of improper and corrupt conduct made in the article were true. With the information so received was an affidavit made by a resident of Muscatine county in regard to the alleged sale of the Wilton office. It purported to give some of the facts connected with the transaction, and tended to show

5. ——: ——: contents of lost letter.

that portions at least of the alleged libel were true. The affidavit was received with a letter from Gen. Saunders of Davenport. After proving the loss of the letter, the defendant was asked if he could tell its contents. An objection to the question as incompetent and immaterial was sustained, and to that ruling the defendant excepted. He then "proposed to show that the contents of the note were, that they had investigated the case, and were satisfied that the facts, as set out in the affidavit, were true, and asked the defendant to publish the affidavit." There was no ruling on the offer, and no further question was asked by defendant. After stating the facts which he expected to prove, we think defendant would have been entitled to show the contents of the letter, had he insisted upon it, as tending to show that he acted with due caution and in good faith. But he did not seek to produce the evidence after making the offer. Moreover, the writer of the letter afterwards testified that he sent the affidavit to defendant for publication, if he thought it proper to publish it; that, although he could not repeat the contents of the letter, he could recall that he submitted it to defendant's judgment, and said, in effect, that the facts had been investigated to some extent, and that the affidavit was the result of the investigation. The defendant thus had the benefit of that which he offered to prove. It was not given as fully as he might have stated it, but it was the same in substance and effect.

VI. The defendant was asked if he did not support Judge Hayes in his first candidacy for congress, 6. —: —: and, his objection to the question having been malice. overruled, he answered: "I did. I was not familiar with his political methods then." The defendant was then asked if he had not requested Judge Hayes, at the close of his first campaign for congress, to recommend him for the position of collector of internal revenue for his district. The defendant and Judge Hayes belonged to the same political party, and it seems to have been the theory of the state that the hostility of defendant to the re-election of Judge Hayes

was due, in part at least, to the failure to secure his
recommendation for the place named, and that it was
not due to his desire to prevent the election of a corrupt
candidate. We think the questions were proper as
tending to establish the theory specified. The facts
they sought to elicit were proper to be considered as to
the alleged malice of defendant. If his course was
prompted by disappointment in not receiving a coveted
office, it was proper for the jury to know it. The
defendant insists that he was not really a candidate for
the place named, and that his failure to get it had noth-
ing whatever to do with the course he subsequently
pursued. It was for the jury to determine the truth of
the matter.

VII. The appellant insists that the verdict is not
supported by the evidence. It is alleged that the cor-
7. ——: verdict: rupt agreement for the sale of the Wilton
sufficiency of
eviden.ce.  office was made with a man named Mahanna,
who was to pay five hundred dollars to one Johnson,
and that the latter had a corrupt agreement with Hayes
in regard to the matter. Mahanna was an applicant for
the office of postmaster at Wilton. Johnson was a local
politician of some influence. Mahanna claims that he
was to pay Johnson five hundred dollars ;to secure
the appointment, and that Johnson said that he was
not to have the money,. Johnson admits that there
was talk about a payment of five hundred dollars to
secure the office, and that he made known the offer
to Hayes ; but he claims that Mahanna had said he
would give five hundred dollars rather than see a rival
named Ross appointed. Hayes admits that he knew
there was some understanding in regard to the office
between Mahanna and Johnson, but claims that he did
not know what it was, and was not interested in it. He
also further claims that Mahanna spoke to him about
the matter, stating that Johnson had offered to secure
the appointment for five hundred dollars, and suggest-
ing that there might be a division of the amount with
him ; that he thereupon recommended the appointment
of Ross, who was subsequently appointed.

That there were improper negotiations in regard to the office in question is clear, but the connection of Congressman Hayes with the matter is not so apparent. There is much evidence tending to show that defendant acted with reasonable caution to ascertain the truth of the charge before he published it, and that he believed it to be true. The evidence as to probable cause and good faith was such that the jury might well have found the article in question privileged within the rule heretofore announced by this court. *Bays v. Hunt*, 60 Iowa 251; *Mott v. Dawson*, 46 Iowa, 533. If the defendant, having investigated the subject-matter of the charge with reasonable diligence and care, believed it to be true, it was not only his privilege, but his moral duty, without malice, to make it known. While that is true, he was not justified in taking advantage of the opportunity to revenge himself for real or fancied personal injuries under the pretense of working for the public good. His act must have been prompted by good motives, and intended for justifiable ends. It was the right of the jury to determine, at their discretion, the law and the fact of the case. Code, sec. 4102. There is conflict in the evidence as to some of the material facts in issue, and from some of the evidence which is not conflicting different minds might draw diffeient conclusions. Under these circumstances we cannot say that the jury abused the discretion which the law gave them.

VIII. Numerous questions in regard to the rulings on the admission of evidence, and the charge of the court and instructions refused, are discussed by counsel, which we need not specially mention. We have examined all the questions thus presented, and find no error prejudicial to defendant. The charge of the court is quite full and favorable to him. The judgment of the court is, therefore, AFFIRMED.