STATE OF IOWA v. JAMES HASKINS, Appellant.

**Criminal Libel:** QUALIFIED PRIVILEGE. Where a libel published concerning a candidate for judge is circulated outside the judicial district, it is not privileged, and, on a criminal prosecution, accused's belief in its truth affords him no protection.

**Evidence:** ORIGINAL RECORDS: *Harmless error.* Accused cannot be prejudiced by the introduction of the original records of another county, instead of a certified copy of them, the evidence being otherwise competent.

**OFFICE:** *Best evidence.* Where it is simply sought to show who is acting as a county officer at a certain time, this can be done by the statement of a witness, without producing the officer's commission.

*Conclusions.* A statement of a witness that a certain person was a county officer is not objectionable as being a conclusion.

*Appeal from Buena Vista District Court.*—HON. W. B. QUARTON, Judge.

WEDNESDAY, DECEMBER 13, 1899.

INDICTMENT for libel. There was a trial to jury, verdict of guilty, and from the judgment entered thereon defendant appeals.—*Affirmed.*

*T. H. Chapman* for appellant.

*Milton Remley,* Attorney General, and *Carr & Parker* for the state.

WATERMAN, J.—Defendant is the editor and publisher of a newspaper printed in the county of Buena Vista, one of the counties composing the Fourteenth judicial district of

this state. The article upon which this prosecution is founded
was written by one Bruce, and published by defendant in
his paper, at a time when one F. H. Helsell was a candidate
for the office of judge of the district court in and for said
district. The article charged Helsell with fraudulently al-
tering a public record. No claim is here made that the
charge was true. It is, however, insisted by defendant that
if he published the article in good faith, believing it to be
true and actuated by justifiable motives, he cannot properly
be convicted. A determination of the question thus presented
will dispose of several of the assignments of error.

In order to make plain our reasons for the conclusion
at which we have arrived, it will be necessary to consider, to
some extent, the common law relating to this subject. *First,*
let us say there have always been some material distinctions
preserved between civil actions, in which damages were
sought for this offense, and criminal proceedings. In a crim-
inal proceeding at common law, the defenses were but two,—
a denial and a plea of privileged communication. The truth
of the matter charged could not be given in evidence by a
defendant. It was a maxim that "the greater the truth the
greater the libel. A prosecution for this offense was founded
on the thought that a publication of a libel was likely to
provoke a breach of the peace, and the fact that it was true
tended rather to increase the probabilities of such a result.
1 Kent Commentatries, 621. But, in a private action for
pecuniary recompense, the truth of the charge could always
be shown in justification, or in mitigation of damages, since
as it is said, a man is entitled to no better reputation than
his actual character would warrant. 1 Greenleaf Evidence,
section 421; *J'Anson v. Stuart,* 2 Smith Lead. Cas. 986,
note. In course of time, the rule was adopted in many of the
states of the Union allowing the truth of the charge to be
shown as a defense. In our own state this principle is em-
bodied in the constitution. Article 1, section 7. But with us
it is qualified. The truth can be shown only when the pub-

lication is made "with good motives and for justifiable ends." Except as thus modified, the common law relating to libel governs in this state. Without the constitutional provision mentioned, the truth itself would be no defense. There is no little uncertainty in the books on the question of what constitutes a privileged communication, or rather what publications are protected as such. There are cases which hold that a charge of crime made against one who is a candidate for public office may be the subject of privilege. *Briggs v. Garrett,* 111 Pa. St. 404 (2 Atl. Rep. 513). The contrary is held by many courts of high standing. See *Bronson v. Bruce,* 59 Mich. 467 (26 N. W. Rep. 671), and cases cited. We need not determine between these conflicting authorities for reasons which will presently appear. An absolute privilege is a complete defense. No legal complaint can be founded upon words spoken or written under its protection. Of this nature are proceedings in legislative assemblies, and generally in judicial tribunals. A qualified privilege is where the communication is made in the discharge of some duty, social, legal, or moral. Such a defense may be rebutted by a showing of actual malice. To establish a qualified privilege, it must be shown that defendant believed the charge to be true, and published it in the discharge of some duty, and we may assume that it was a duty on his part to make known to the electors of the Fourteenth judicial district the true character of a candidate for the office of district judge. But, if this duty was in any way transcended, the good faith of defendant ceased to be material. Evidence of good faith is admissible, not as a defense in itself, but only as an element going to make up the defense of qualified privilege. It appeared in this case, from defendant's own testimony, that he voluntarily published the charge, not only outside the Fourteenth judicial district, but outside the state; thus making it known to persons who were in no way interested in the judicial election. We have been cited to no case, and know of no principle of law, that would sustain

the claim of privilege, under these circumstances. In *Buckstaff v. Hicks,* 94 Wis. 34 (68 N. W. Rep. 403), on a state of facts quite similar to those here involved, the court said: "The evidence showed that the newspaper in question circulated in adjoining counties and cities outside of the county of Winnebago, and outside of the plaintiff's senatorial district. To claim that there was any duty, public or private, resting on the defendant to publish such a charge against the plaintiff in these localities is to demonstrate the absurdity of the claim. There was not only no duty, but there was certainly no tangible interest in the subject-matter on the part of the people outside plaintiff's district. Thus, it is very plainly seen that the publication, even if it could be considered as privileged when made to a citizen of Oshkosh, who might be said to be interested in the subject-matter, could not be made broadcast to the world, and preserve its privileged character. The publication is excessive. It must be confined to people to whom defendant owes a duty to speak, or who have an interest with defendant in the subject-matter." See also *Rude v. Nass,* 79 Wis. 321 (48 N. W. Rep. 555).

We have, then, this question, somewhat narrower than discussed by appellant's counsel, presented: Where the publication of libelous matter is shielded by no privilege, can a defendant in a criminal proceeding exonerate himself by showing a belief on his part in the truth of the charge? We know of no authority in support of the affirmative of this proposition. In all the cases where evidence of the good faith of the defendant has been admitted, it was not as a direct defense, but only as tending to establish one essential element of a qualified privilege. *Mott v. Dawson,* 46 Iowa, 533; *Bays v. Hunt,* 60 Iowa, 251, and *State v. Conable,* 81 Iowa, 60, relied on by defendant, go no further than this. For the reasons stated, we think the evidence of defendant's good faith was inadmissible. What we have said sufficiently indicates, also, our reasons for holding that the court properly refused the instructions asked by defendant. The charge

as given we regard as a concise, clear, and correct exposition of the law governing the case. We think, too, that the ground has already been stated upon which we sustain the trial court's action in striking out the testimony upon which rulings were reserved, and which is discussed in the third division of the argument for defendant, and also the matter complained of in the fifth division thereof. The various questions there raised rest upon defendant's right to show his good faith as a defense.

II. An original book of records from Pocahontas county was introduced in evidence on a certain point. It is claimed there was no authority for bringing an original record from another county; that the proof should have been made by certified copy. If defendant's position is correct, we can see no just ground of complaint on his part. He certainly suffered no prejudice.

III. A witness was allowed to say what person was county auditor at a certain time. It is argued that this was a conclusion and inadmissible. All that was sought was to show who was acting as county auditor. This could be done without producing his commission. 1 Greenleaf, Evidence, section 83. What the witness stated was a fact, and not a conclusion. No other matters not covered by what we have already said are presented. Some question is made by appellee as to the sufficiency of the exceptions to raise some of the matters passed upon. We have not investigated this claim, but, for reasons that seemed to us sufficient, have passed upon the merits of the case presented.— AFFIRMED.

ROBINSON, C. J., taking no part. GRANGER, J., not sitting.