HARVEY FLEAGLE, Appellant, v. PAUL H. DOWNING, Appellee.

LIBEL AND SLANDER: Fraudulent Procurement of Pension. A published charge that plaintiff had procured the allowance to himself of a pension from the government by the false pretense that he had been injured while in the military service, is actionable *per se.*

LIBEL AND SLANDER: Libel and Slander of the Dead. A son may not recover damages for a libel or for a slander of his father, published or spoken after the father's death.

LIBEL AND SLANDER: Privileged Communications. Privilege will never be presumed.

LIBEL AND SLANDER: Innuendoes.   Innuendo may not enlarge
4    the meaning of published or spoken words.

*Appeal from Cedar District Court.*—MILO P. SMITH and
F. O. ELLISON, Judges.

### JUNE 27, 1918.

ACTION for libel and slander. Demurrer to petition.
Demurrer sustained. Plaintiff filed an amended and sub-
stituted petition. Motion to strike amended and substi-
tuted petition on the ground that it was simply a repeti-
tion of the cause of action alleged in the original petition.
Sustained. Amended and substituted petition stricken.
Defendant properly preserved exceptions to both rulings,
stood upon his pleadings, and appealed.—*Reversed.*

*John C. Higgins* and *Sharon & Harrison,* for appellant.

*J. C. France* and *C. O. Boling,* for appellee.

GAYNOR, J.—This action is brought to recover dam-
ages for an alleged slander and libel. The action was
brought in two counts. The first count in the original pe-

1. LIBEL AND
   SLANDER:
   fraudulent pro-
   curement of
   pension.

tition alleged that, in the month of May,
1915, the defendant published and circu-
lated, in writing and verbally, of and con-
cerning the father of the plaintiff, that plain-
tiff's father was considered very disagreeable, not stable,
went to extremes in conversation, and that he died in the
poor farm. It is alleged that this blackened and vilified
the memory of plaintiff's father, and scandalized and pro-
voked the plaintiff; that these statements were falsely made,
and with a malicious intent to injure, scandalize, and pro-
voke the plaintiff. The second count alleged that plaintiff,
at the commencement of the Spanish-American War, en-
listed as a private; that, while in service, he received inju-
ries from sunstroke; that this affected his nervous system,
and indirectly, his mind; that, on account of the injuries so

received, the United States government paid him a pension of $24 a month; that, at the time of the happening of the matters complained of, the plaintiff was receiving a pension from the government on account of such disability; that the defendant, with the malicious intent and purpose of injuring the plaintiff and of depriving him of the pension, verbally and in writing said, published, and circulated that plaintiff was not injured in the service of the United States, that his mental condition was the same as it was before he entered the service, that his mind was no different than it was thirty years ago, that he was not considered unbalanced, but had a disagreeable disposition, and made himself disagreeable, that he did not appear to be physically disabled, and had no physical disability; and said:

"I would like to be as strong physically as I believe him to be. All that can be seen is that he is easy to get into an argument and disagreeable to get along with, the same as when he was a boy and young man, and the same as his father was,"—thereby intending to charge, and charging, that the plaintiff falsely, and by the use of fraudulent evidence as to his mental and nervous condition, obtained and was receiving a pension from the government, and for the purposes of having it understood and believed that plaintiff had fraudulently obtained a pension, and was fraudulently cheating the government of the United States out of money paid to him under the pension certificate. It is further alleged that the statements so made were untrue, and known by the defendant to be untrue. Plaintiff further alleged that he was obliged to carry on correspondence with the government and with other parties, and to make trips to distant cities, at great expense, to disprove defendant's statements, and that he was denied the credit which he had received and was able to obtain on account of the pension, and he was scandalized and humiliated before the community in which he lived, and provoked to wrath.

To this petition and each count thereof, the defendant filed a demurrer. The demurrer was sustained, and the plaintiff given ten days in which to amend. Within the ten days, the plaintiff filed an amended and substituted petition, in which he charged more fully and particularly the matters alleged in the original petition. In addition to the matters hereinbefore set out, he alleged that defendant, both verbally and in writing, published of and concerning him that his alleged injury of heart and brain was not the result of any injury sustained in the service of the United States; that he was not entitled to the pension he was receiving; that he was not physically disabled,—thereby accusing the plaintiff of the crime of obtaining a pension by fraud and perjury, without any basis therefor in fact, and on perjured testimony; and that, by reason thereof, plaintiff was exposed to public hatred, contempt, and ridicule, and was deprived of the benefits of public confidence and social intercourse; that he has spent time and money in seeking to expose the falseness of the statements made by the defendant; that he was compelled to obtain other testimony at Davenport, Cedar Rapids, and Iowa City, and many other places, at much expense, to show the falsity of the charges made by the defendant, and was deprived of $12 per month as pension by the United States government from and after January 1, 1916.

Upon the filing of this amended and substituted petition, the defendant moved to strike it from the records, on the ground that it was simply a repetition of the allegations of the petition to which the demurrer had been sustained. The court sustained this motion. The plaintiff elected to stand .on his pleadings, and his petition was dismissed. From this he appeals.

Due exceptions were taken to the ruling on the demurrer, and exceptions also preserved to the action of the court in striking the amended and substituted petition.

The correctness of both rulings is before this court, under the rule laid down in *Wisner v. Nichols*, 165 Iowa 15.

2. LIBEL AND
SLANDER:
libel and
slander
of the dead.

As to the ruling on the demurrer to the first count, we think the court was correct. We need not discuss this further than to call attention to what was said by this court in *Bradt v. New Nonpareil Co.*, 108 Iowa 449.

The matters complained of in the second count of the petition, if believed to be true, would lead the mind to the conclusion that the plaintiff, knowing he had suffered no disability while in the service of his country in the Spanish-American War, had fraudulently procured a pension from the government for disabilities not sustained,—clearly charging the plaintiff with defrauding the government, and with obtaining property by false pretenses, a criminal offense which lays the foundation of a civil action, if unfounded, untrue, and maliciously made.

Defendant claims that the communication was to a public officer, and, therefore, privileged. There is nothing in the petition to show the privilege relied upon. If it were,

3. LIBEL AND
SLANDER:
privileged com-
munications.

in fact, a privileged communication, made by the defendant in a judicial proceeding, or in any proceeding that affords him the protection of privilege, it is a matter of defense, and not to be assumed without proof. Where the charge is, on its face, slanderous or libelous, where, on its face, it imputes to one the commission of a public offense, anyone who hides behind any privilege given to him by law must allege and prove the facts and circumstances that bring him within the protection of the privilege. It is not our purpose here to enter into a discussion of what constitutes privilege. There is nothing in this record to justify the assumption that the statements were privileged, or that entitles defendant to invoke the privilege behind which he seeks shelter. We think the second count of

plaintiff's petition stated a fair cause of action for slander and libel, and that the demurrer should have been over-ruled. The amendment, being a more particular statement of the cause of action set out in the second count, which we hold to be good, should not have been stricken on motion.

As said in *Sheibley v. Ashton,* 130 Iowa 195:

"We should not indulge in any critical refinements to discover the intent of the writer, nor too carefully scan the language to see if there is not some technical view which will sustain the defendant's contention. Ordinarily, minds do not critically analyze and scan such publication. They give them their natural and ordinary signification; and to such interpretation we think this defendant should be held."

It is the thought expressed that does the harm. The jury could well find, if this matter came to the jury, upon proper proof of the allegation made, that the defendant

**4. LIBEL AND SLANDER: innuendoes.**

charged plaintiff with procuring wrongfully a pension from the government, and with wrongfully receiving money, as a pensioner, for injury he had never sustained. Now it is apparent that, if the plaintiff had never sustained the injuries, and had applied to the government for a pension, on the theory that he had received injuries while in the service of the government, false proof of injury would have to be made; and, if the injury had never been sustained, plaintiff must have known it. His application and his proof would be false, and known to him to be false. He would, therefore, be receiving money from the government falsely and fraudulently. While innuendo cannot enlarge the meaning of the words, yet a jury could well find, from the words themselves, and the circumstances under which they were spoken, that the defendant intended the very thought which the innuendo charges, and conveyed and intended to convey that thought by the words used. Words are to be construed according to the ideas they are calculated to con-

vey. They are to be understood in their plain and popular sense; in the sense in which fairly intelligent English-speaking people would ordinarily understand them. The question is, What idea did the defendant intend to convey, and what idea did he convey to his hearers? The words must be taken in the sense in which they are generally understood; and if they convey the idea that the plaintiff had falsely obtained a pension from the United States government, knowing that he was not entitled to the pension (and he surely would have known it, if the defendant's statements are true), then he perpetrated a fraud upon the government. To charge him with perpetrating such a fraud upon the government is actionable. We think the court was wrong, both in sustaining the demurrer and in striking the amendment to the petition from the files, and the action is, therefore,—*Reversed.*

PRESTON, C. J., WEAVER and STEVENS, JJ., concur.