B. I. SALINGER, Appellant, v. GARDNER COWLES, Appellee.

**LIBEL AND SLANDER:** Justification—Rule of Sufficiency. The rule 1    that, in an action for damages consequent on a libel, a plea in justification· must be as broad as the charge, is literally complied with by a plea *which copies the plaintiff's allegation as to the sense, in which the charge was used,* and alleges that in said sense the article was true.

**LIBEL AND SLANDER:** Justification—Specification Required. A 2    plea in justification of an alleged libel to the effect that a published writing was true, in the sense that plaintiff "had used his position as a judge of the Supreme Court to coerce railroads having important litigation in that court into giving employment to a named person," need not go further, and recite the *particular acts and things* done by the plaintiff to effect such coercion. Especially

may the plaintiff not complain when such particular acts and things are made to appear in other parts of the pleadings.

**TRIAL: Instructions—Recognition of Issue and Evidence Thereon.**
3  Principle reaffirmed that the asking of an instruction on a certain issue works a concession that the record contains sufficient testimony to support a finding on such issue.

**LIBEL AND SLANDER: Justification—Jury Issue.** Record reviewed,
4  and held to present a jury question on the issue whether plaintiff in an action for libel did use his position as a judge of the Supreme Court to coerce a railway company which had important litigation in that court into giving employment to a named person.

**LIBEL AND SLANDER: Privileged Communications—Sufficiency of**
5  **Plea.** A pleading will be treated as tendering the issue of *privilege* in the publication of an alleged libel when it contains all the essential elements of such a plea and was exclusively so treated by the pleader, even though the term ''privilege'' does not appear therein.

**LIBEL AND SLANDER: Privileged Communications—Criticism of**
6  **Public Officer.** A criticism or charge leveled at a person who occupies a public position may be privileged. So held as to the charge that a judge of the Supreme Court had used his position to coerce a railway company having important litigation before the court into giving employment to a named person.

*Appeal from Polk District Court.*—LAWRENCE DE GRAFF, Judge.

DECEMBER 15, 1922.

REHEARING DENIED APRIL 6, 1923.

SUIT for libel. The jury returned a verdict for the defendant, and plaintiff appeals.—*Affirmed.*

*John McLennan,* for appellant.

*Clark, Byers & Hutchinson,* for appellee.

FAVILLE, J.—The appellant's petition alleges that appellee is president of a corporation that owns, controls, and publishes a newspaper known as the Des Moines Register, published at Des Moines, Iowa; that, on September 4, 1916, the appellant was a judge of the Supreme Court of Iowa; and that, on said

date, there was published in said newspaper an article charging, in effect, that appellant had used his position as a judge of the Supreme Court of Iowa to coerce railroads having important litigation in that court into giving employment to one A. C. Savage. The petition alleges that, on October 23, 1916, the appellant served notice, in writing, upon the appellee, demanding of him that he make a retraction, and that no retraction had been made.

In January, 1918, the appellee filed an answer, which was a general denial. Subsequently, the appellee filed his first amendment to the answer, which amendment was attacked by motion for more specific statement and to strike parts therefrom, which motion was sustained by the court. Whereupon, the appellee filed his second amendment to answer, which was attacked by motion for more specific statement and to strike certain parts thereof, which motion was overruled. Thereafter, the appellant demurred to said second amendment to the answer, which demurrer was overruled. The cause proceeded to trial upon the issues so joined, and the jury returned a verdict in behalf of the appellee.

Thirty-five errors are assigned, which are supported by 108 brief points. The court held that the article was libelous *per se.*

I. It is strenuously urged by the appellant that the court erred in submitting to the jury any question of justification. The article sued upon is as follows:

1. LIBEL AND SLANDER: justification: rule of sufficiency.

"Former State Senator Savage is quoted by the Des Moines News as predicting that Harding will have more votes in Iowa than Hughes. We are pleased to hear from Senator Savage, because it brings his head above the political horizon and makes it proper to comment on his present employment and the occasion of it. Senator Savage is now on the pay roll of the Rock Island Railroad. Will he tell the readers of the Register how he happened to drop into that place, after having exhausted the family resources? Did Senator Savage apply for a job in the usual way? Or did Judge Salinger, of the Supreme Court, at a time when the railroads had litigation of the most important kind before his court, notify the railroads that Sen-

ator Savage must be 'taken care of?' If Senator Savage does not choose to answer this question, perhaps Judge Salinger will care to answer it.''

Appellant alleged ''that said matter was used in the defamatory sense of charging the plaintiff with having used his position as a judge of the Supreme Court of Iowa to coerce railroads having important litigation in that court into giving employment to one A. C. Savage.''

The first division of the amendment to the answer alleged:

''That the charge in the publication complained of by the plaintiff, charging the plaintiff with having used his position as a judge of the Supreme Court of Iowa to coerce railroads having important litigation in that court into giving employment to one A. C. Savage, was and is true, and said publication in this and all other respects was and is true.''

It is urged that, upon this state of the pleadings, there was no sufficient plea of justification. It is contended that the plea of justification was insufficient because it is not as broad as the libel,—as the very charge.

It is the general rule that a plea in justification must be as broad as the charge, and as the precise charge. It need not be in the exact form of the charge, but it must be, in essence and substance, the same. *Hollenbeck v. Ristine,* 105 Iowa 488; *Morse v. Times-Rep. Ptg. Co.,* 124 Iowa 707; *Berger v. Freeman Trib. Pub. Co.,* 132 Iowa 290; *Snyder v. Tribune Co.,* 161 Iowa 671; *Wallace v. The Homestead Co.,* 117 Iowa 348, 361; *Rhynas v. Adkisson,* 178 Iowa 287.

The allegations of the petition and of the answer are quoted above. It is apparent that the language of the answer literally follows the allegations of the petition charging the defamatory sense in which the published words were used. It is alleged that the charge as pleaded and claimed by appellant was and is true, and that ''said publication in this and all other respects was and is true.''

The answer admits the publication of the article. It admits that said article charged the appellant with doing the very thing which the petition alleges it charged him with doing. It avers that the charge as so alleged ''was and is true.'' It in no manner seeks to avoid the charge as made by appellant. There is

neither evasion, modification, nor qualification of the charge pleaded.

We think it quite apparent that the appellee's plea of justification literally complied with the requirement that the plea "must be as broad as the charge, and the very charge."

II.  Appellant's further contention is that the plea of justification, although in the identical language of the charge in the petition, is insufficient in that the instances and manner in which it is claimed the appellant misconducted himself were not stated "with sufficient particularity to inform the plaintiff precisely of what were the facts to be tried."  Appellant's claim is that the object of the plea in justification is to give the plaintiff in the action "the means of knowing what are the matters alleged against him;" that "the particulars must be stated;" and "that the plea of justification should state specific facts, showing in what instance and in what manner plaintiff misconducted himself."

2. LIBEL AND SLANDER: justification: specification required.

The general rule in actions of libel is that, where the defamatory · charge is general in its nature, the plea must state specifically the acts or offenses of which plaintiff is guilty, or other facts showing the truth of the charge.  A mere assertion that the charge is true is not sufficient.  *Donahoe v. Star Pub. Co.*, 3 Pennew. (Del.) 545 (53 Atl. 1028) ; *Dowie v. Priddle,* 216 Ill. 553 (75 N. E. 243) ; *Amos v. Stockert,* 47 W. Va. 109 (34 S. E. 821) ; *Kansas City Star Co. v. Carlisle,* 108 Fed. 344; *McClintock v. Crick,* 4 Iowa 453.  For example, if it is published of one that he is a murderer or a thief or a perjurer or a swindler, it is not a good plea in justification to admit the publication and to aver that the charge is true.  In such a case, in order for the plea to be a good plea in justification, it must contain averments of specific facts and instances, showing wherein it is true that the party is a murderer or a thief or a perjurer or a swindler, as the case may be.  But where the charge in the libelous article is not in such general terms, the rule as to allegations of specific instances in a plea of justification does not prevail.  A few citations will illustrate the holdings of the courts.  In *Campbell v. Irwin,* 146 Ind. 681 (45 N. E. 810), the court said :·

"A distinction is made where the words impute an offense in a general way, and where they particularize the charge. Where the defamatory words as set out sufficiently describe the offense, then an admission by the defendant that he spoke the words as charged, and a general affirmation that they are true, has been held to be sufficient."

In *Stark v. Publishers George Knapp & Co.*, 160 Mo. 529 (61 S. W. 669), the court said:

"Where the defamatory matter complained of is in general terms, as that plaintiff is a murderer, thief, or other imputation which is a mere conclusion or inference of facts, the particular facts relied upon warranting the inference charged must be set forth specifically in a plea of justification, so that the plaintiff may be advised of the particular matter that he will be called upon to meet. But when the defamatory matter charged is itself specific, it is sufficient to allege generally that the charge is true."

In *Nettles v. Somervell*, 6 Tex. Civ. App. 627 (25 S. W. 658), the court said:

"The plea is generally broad enough if it merely state that the matter charged to be libelous is in fact true. When, however, the libel is of general character,—as that a person is a thief, a murderer, or a man unworthy of credit,—the plea of justification must set up the facts which make such a character."

In *Kuhn v. Young*, 78 Tex. 344 (14 S. W. 796), the article complained of as libelous was as follows:

"It has been reported that one of our butchers has been in the habit of purchasing diseased and disabled cattle that were injured in transportation and left at the stockyards at this place, and after dressing their carcasses, offers the meat for sale to his customers at his market."

There was a general averment in the answer that the charge as made was true. The court said:

"If the charge be but a conclusion from facts not stated, as that the person referred to is a thief or murderer, it is no doubt necessary for an answer alleging the truth of the charge to state the facts which make the party a thief or murderer, and to allege that these exist. Such, however, is not the indefinite nature of the charge made in the publication, and it was not

error to admit the evidence complained of, under the answer, which alleged the facts stated in the publication to be true.''

Many other similar cases might be cited.

If the published article in the instant case had charged the appellant with misconduct in general terms, a plea of justification, to be sufficient, must have alleged specific instances and specific facts which would establish the character attributed to appellant in the article. For example, if the article had alleged that appellant was ''a corrupt judge,'' a plea of the truth of the charge, without more, would not have been a good plea in justification. In such a situation, it would have been essential for appellee to have alleged the specific instances of misconduct upon which it relied to sustain the truth of the general charge that appellant was ''a corrupt judge.'' The article in question, however, is not of this character. There is no such general charge therein.

The appellant alleges the defamatory sense in which he claims the matter in the article was used. It is alleged that a certain definite and specific thing was meant to be charged: namely, that appellant had used his position as a judge of the Supreme Court of Iowa to coerce railroads having important litigation in that court into giving employment to one A. C. Savage. This is not a general and indefinite charge. It is certain and specific.

Appellee was not required to plead evidence. He accepted the meaning placed upon the article by the appellant. That was not a general and indefinite meaning. Appellant does not claim that the article charged him with misconduct or corruption generally. He alleges that it meant to charge him with improper conduct in a particular and definite matter, with respect to a certain individual. The appellee concedes by his answer and pleads that the charge so made was true. This, we think, was sufficiently definite and specific to meet the requirements of the rule. When we read the answer as a whole, this becomes more apparent. The second paragraph of the answer was as follows:

''Defendant, further answering, says that at and prior to the publication complained of here, Mr. Harvey Ingham, who was managing editor of the newspaper referred to in plaintiff's

petition, and who was in charge of the editorial department of said paper, was informed by Mr. Fred Sargent, who was attorney for the Chicago, Rock Island & Pacific Railway Company, that the plaintiff had called upon him and insisted that Mr. Arthur Savage, the person referred to in the publication herein complained of, should be given employment by said railroad company. That thereafter, and before said publication, the said Salinger went with Mr. Sargent to Chicago, to see the general attorney of the railroad, for the purpose of securing for said Savage employment with said railroad. That the said Salinger did see the general attorney of said railroad, and urged and insisted that the said Savage be given a position with said company. That, in response to the solicitation and influence of said plaintiff, employment was given to Mr. Savage. That, at the same time, Mr. Sargent advised Mr. Ingham that the Chicago, Rock Island & Pacific Railroad Company and other railroads had numerous important cases pending before the Supreme Court, of which said plaintiff was a member. That the said Ingham, believing the statements of Mr. Sargent to be true, and believing the said conduct and practice on the part of a judge of the Supreme Court of the state of Iowa to be reprehensible and wrong, that he did in good faith, and for the sole purpose of advising the public of such practices upon the part of said plaintiff, and to protect the public therefrom, and to deter the plaintiff from continuing the same, write and caused to be published the editorial herein complained of. That said article was written and published without the knowledge of this defendant.''

This paragraph, while not incorporated in the one pleading justification, was a specification in the answer of the definite and specific instance relied upon by appellee as supporting the charge made. None other was claimed as a justification.

The plea of justification should be complete in itself. This paragraph was not pleaded as a part of the plea of justification. We regard the first paragraph of the amendment, however, as being a sufficient plea of justification.

But, in view of the manner in which the different paragraphs of the answer in the instant case were drawn, the appellant was therefrom also fully advised of the facts relied upon

by appellee to justify the publication of which complaint is made.

Moreover, the appellant requested the court to submit certain instructions to the jury. In requested Instruction No. 4, he thus stated the issue as to the plea of justification:

3. TRIAL: instructions: recognition of issue and evidence thereon.

"The charge upon which this suit is based is that the plaintiff used his official station to coerce, by means of the pendency of most important litigation before the court of which he is a member, one of the parties of such litigation to give a position to one A. C. Savage; that he used the pendency of such litigation and his said position to demand that such place be so given; that he declared the said Savage must be taken care of by the said litigant, and repeatedly insisted and demanded that this be done. The defendant has pled that this charge is true."

"It is a well settled rule that a party asking instructions which, if given, would submit to the jury an issue of fact, cannot thereafter be heard to say that there was no evidence for the jury's consideration." *Martens v. Martens,* 181 Iowa 350.

The appellant acquiesced in the theory that the plea of justification was sufficient; he offered proof on the question; he requested an instruction on that theory; he was advised throughout of the specific instance relied upon by appellee as constituting justification. Upon the entire record, we hold that the plea of justification was sufficient, and that it was a proper matter to submit to the jury.

III. The sufficiency of the evidence to sustain the plea of justification is challenged. At the close of all the evidence, appellant moved that the testimony of the witnesses, in so far as it

4. LIBEL AND SLANDER: justification: jury issue.

might be claimed that the same tended to show the truth of the charges, be stricken from the record. This motion was overruled, and the question of justification was submitted to the jury.

In considering this question, it becomes necessary that we set out at least a portion of the evidence upon the question of justification. It appears from the testimony of the appellant that, some time prior to the publication of the editorial in question, he had an interview with Mr. Fred Sargent, who at that

time was the general attorney for Iowa of the Chicago, Rock
Island & Pacific Railroad Company, and had charge of litigation
then pending in the Supreme Court of Iowa; that he had been
acquainted with Mr. A. C. Savage for a long time, was very
fond of him, and had known him politically, as well as other-
wise; that he learned that Mr. Savage had become a consump-
tive, and had an only child, a daughter, who was also a con-
sumptive, and that he was penniless; that appellant had helped
support him for a while, by paying his bills at a hotel in Des
Moines, and had talked with him about getting a job. There-
after, the appellant and Mr. Sargent happened to meet in the
office of the clerk of the Supreme Court, and had a conversation
in regard to the matter of having Mr. Savage employed by the
said railroad. Later on the same day, Mr. Sargent called at
the chambers of the appellant at the statehouse. No other per-
son but the two gentlemen was present at that time. The matter
of employing Mr. Savage was talked over, and his abilities were
discussed. The appellant suggested that Savage would make a
good man in the real estate and tax department of the railroad,
because of his familiarity with titles, which he had acquired in
the banking business. He was informed by Mr. Sargent that
the latter had no power to give employment in that capacity,
and Mr. Sargent suggested that the general solicitor of the
railroad company in Chicago was the man who had the power
to make such an appointment. It was arranged that the appel-
lant and Mr. Sargent should go to Chicago for the purpose of
an interview with the general attorney. The arrangement was
that, when Mr. Sargent got ready to go, he was to so advise
the appellant; and this was done within a week or two after
the interview referred to. Appellant and Mr. Sargent met in
Chicago, going in by different trains and at different times.
After meeting at a hotel, they went to the office of the general
attorney of the Rock Island Railroad, and Mr. Sargent intro-
duced the appellant to the general attorney, one Bell. The ap-
pellant explained to Mr. Bell how long he had known Mr. Sav-
age, what kind of man he was, about his condition, and what
appellant thought he was competent to do. · The interview lasted
about fifteen minutes. Mr. Savage was appointed by Mr. Bell
to a position in the employ of the railroad company, and Bell

told the appellant at said interview that he was going to employ him. The appellant wired Savage to come to Chicago, which the latter did within a day; and when he arrived, the appellant went with him to Mr. Bell, and introduced the parties. Appellant talked with Mr. Bell about whether the employment would furnish Mr. Savage with transportation for himself and for his daughter, so that the latter could be sent to New Mexico. There was no discussion with the appellant in regard to the salary, but Bell informed the appellant that he thought he could place Savage in the tax department. He was employed at a salary of $100 a month. Appellant testified that he knew at the time that the Rock Island Railroad Company had litigation pending before the Supreme Court; that he did not know the number of cases so pending. He testified that lawsuits of any railroad company were not mentioned or thought of in connection with the employment of Savage, and that his motive was simply to save a consumptive man and consumptive child, and that he was willing to give him a good word and to spend his money to recommend him. He also testified that it is not unusual for lawyers to see the different judges of the Supreme Court in their chambers, when court is not actually in session. Appellant testified that, after the transactions referred to, he remained in Chicago some ten days, visiting relatives and attending to business matters.

It appeared that the appellant's term of office did not expire until January 1, 1921. It also appeared that the Supreme Court sits in two divisions, and there was no evidence as to which, if any, of the cases of the Rock Island Railroad were then pending in the division of which appellant was a member.

Mr. Sargent testified that the Rock Island Railroad Company at possibly every term of the Supreme Court had ordinary damage suits before that court. During the year 1916, when the matters in controversy happened, there were such cases, and one of importance that was known as the "Sorenson case." In this latter case, the railroad company obtained a directed verdict in the trial court, which was subsequently reversed in the Supreme Court, and the opinion therein was written by Judge Salinger. Mr. Sargent testified that he had many times been in the chambers of the judges of the Supreme Court at the

capitol. The testimony of Mr. Sargent in regard to the conversations with the appellant was substantially like that given by the appellant. Mr. Sargent testified that, previous to the conversation with the appellant, he had talked with one of the railroad commissioners of Iowa in regard to a position for Mr. Savage.

We have not attempted to detail all of the testimony in regard to the matter of the appointment of Savage by the railroad company, but the foregoing is a general statement of the evidence as to what transpired.

The charge made in the petition was that the said libelous article charged the appellant ''with having used his position as a judge of the Supreme Court of Iowa to coerce railroads having important litigation in that court into giving employment to one A. C. Savage.'' It is this charge which the appellee alleges is true. The question at this point is whether or not, under the evidence in the case, there was any question whatever to submit to the jury as to whether or not the said charge was true.

Under very familiar and well established rules, it is not within our province to pass upon the sufficiency of the evidence. If the finding of the jury upon a fact question has in the record evidence which, with the reasonable inferences proper to be drawn therefrom, fairly tends to support the verdict of the jury, the case is a proper one to be submitted to the jury. There is no substantial conflict in the evidence upon the question. The sole question for our determination at this point is whether or not the court should have directed a verdict on the ground that there was *no* evidence to sustain the plea that the matter charged in the libelous article was true.

We are of the opinion that there was sufficient evidence upon the question of whether or not the charge was true, to carry that question to the jury, and that the trial court did not err in refusing to withdraw the question of justification from the consideration of the jury. In other words, it was for the jury to say, from all of the evidence in the case, whether or not the appellant did use his position as a judge of the Supreme Court of Iowa to coerce railroads having important litigation in that court into giving employment to one A. C. Savage.

IV. Complaint is made of the giving of Instructions Nos. 11, 12, and 15, as follows:

"(11)   To be available as a defense, the justification must be as broad as the libel: that is, that the plea of truth must extend, not only to the entire language complained of, but must allege the truth of the publication in the sense imputed to it by the plaintiff. And in this connection,. the plaintiff alleges in his petition that said matter, as published by the defendant, 'was used in the defamatory sense of charging plaintiff with having used his position as a judge of the Supreme Court of Iowa to coerce railroads having important litigation in that court into giving employment to one A. C. Savage.' It is for you to determine, from all of the facts and circumstances in this case and by a preponderance of the credible evidence, whether or not the defendant, under his defense of justification, has proved the truth of the article as alleged, and has met the imputation as charged by the plaintiff. If, from the evidence and a fair preponderance thereof, you find that the defendant has met these charges in his proof of the truth of the same and of the imputations put upon the published article by the plaintiff, then the defense of justification, so far as the truth of the article in question and the imputations as charged therein are concerned, has been established."

"(12)   In determining, however, the imputations to be drawn from the article in question, you are not required to accept as. true the interpretation put thereon by the plaintiff, but should determine what imputations, if any, are fairly, logically, and reasonably to be drawn from the article as published, by a prudent and fair-minded reader; and if, in your opinion, the defendant, under his defense of justification, by the evidence introduced in the trial hereof has fairly met the reasonable and just imputation that you may find can be drawn from the article in question, then it is for you to determine whether or not the defense of justification, so far as the truth of the article is concerned, has been established."

"(15)   As before stated to you, the burden is upon the defendant to establish this defense of justification by a preponderance of the credible evidence; and if, guided by the foregoing instructions, you find that the publication of the article in

question was justified, and that it was true in the sense you find was imputed by it, then and in such event you may find that defendant has established his defense of justification, and your verdict should be in favor of the defendant on his plea. If, on the other hand, you find that defendant has not so established this defense of justification by proof in this case, it will be your duty to find in favor of the plaintiff and against the defendant on the defense of justification, for damages in such amount as you deem he is entitled to receive, governed by the law in this respect as will hereafter be given to you.''

It is urged that said instructions are conflicting, and that they left it to the jury to place upon the language of the article an imputation not charged by the plaintiff, and to find whether such imputation was true or not. On the other hand, it is contended that the instructions, in effect, do no more than to advise the jury that they are the judges of both the law and the facts in suits for libel, as provided by Code Section 5091. Upon this question the members of the court are equally divided in opinion. Justice De Graff, having been the presiding judge, is disqualified to sit in the case. The action of the lower court on this question is, therefore, affirmed by operation of law.

V. We have previously quoted the second paragraph of the amendment to appellee's answer. The third paragraph is as follows:

''Further answering, the defendant says that, at and prior to the publication complained of herein, numerous rumors were afloat that the plaintiff was using his position as a member of the Supreme Court of this state for the purpose

5. LIBEL AND SLANDER: privileged communications: sufficiency of plea.

of securing positions for members of his family and for his political friends. That the writer of said editorial, believing said rumors and statements to be true, and in good faith, and for the sole purpose of advising the public of such practices upon the part of said plaintiff, and to protect the public therefrom, and to deter the plaintiff from continuing the same, the editorial herein complained of was written and published.''

In Instruction No. 6, the court told the jury:

''Under the defense of privilege, as pleaded, the defendant in his answer states that the article upon which libel is declared

was published in good faith, and for the sole purpose of advising the public of such practice upon the part of said plaintiff and to protect the public therefrom, and to deter the plaintiff from continuing the same.''

In subsequent portions of the instruction and in other instructions, the court submitted to the jury the question of privilege. The appellant challenges the sufficiency of the allegations of the answer as a plea of privilege, and predicates error on the submission to the jury of the issue of privilege. The pleading was duly attacked by motion, on the ground that the said allegations do not make it plain whether it is a pleading in mitigation or in justification, and exceptions were taken to the submission of said plea to the jury. The particular grounds urged are that the plea as set forth in said paragraph of appellee's answer was wholly insufficient as a plea of privilege, for the reason that the matter treated as a plea of privilege is nothing but a plea in mitigation; that the word ''privilege'' is nowhere used in the pleading; that there was no allegation that appellant was a candidate for public office at the time of the publication; that there was no allegation that the newspaper in question circulated in Iowa only; and that the court made no distinction between absolute privilege and qualified privilege.

Where a charge is, on its face, slanderous or libelous, anyone who claims privilege by the publication of such a charge must allege and prove the facts and circumstances that bring him within the protection of the privilege. *Fleagle v. Downing,* 183 Iowa 1300, 1304. We do not think that a fair construction of the answer of the appellee supports the contention that the same was a plea in mitigation. It was not offered as such.

Under Code Section 3593, a defendant may set forth, in a distinct division of his answer, any facts of which evidence is legally admissible, to mitigate or reduce the damages. The appellee made no claim that any of the matters pleaded by him in his answer were pleaded in mitigation of damages. Nowhere in the answer was there any suggestion that, by reason of any of the matters pleaded in defense, any damages the appellant may have suffered should be reduced or mitigated. The answer did not assume to plead anything but complete defenses. The matters set forth in Paragraphs 2 and 3 of the answer were not

claimed to be urged in mitigation or reduction of any damages the appellant may have suffered. They were pleaded as constituting a full defense, and in no other manner. The criticism that the plea was a plea in mitigation, rather than a plea of privilege; is not well taken.

It is urged that the plea in the answer was not a good plea of privilege because the word "privilege" is nowhere contained in the plea. It is not essential to such a plea that the word "privilege" be used therein. It doubtless would be far better to do so, but the essential matters to be proven are the ultimate facts showing privilege. These facts were so alleged by the appellee in the answer, and were pleaded as constituting a defense. The omission of the word "privilege" from the answer did not defeat the same as a sufficient plea of privilege.

It is claimed that the plea of privilege is insufficient because there was no allegation therein that appellant was, at the time of the publication, a candidate for public office. It is alleged in the answer that, at the time referred to, the appellant was a member of the Supreme Court. Evidence was offered to show that the appellant was not at said time a candidate for office, and that his term would not expire until approximately four years after the publication, and that at said time he had not announced himself as a candidate for re-election.

6. LIBEL AND SLANDER: privileged communications: criticism of public officer.

We have held that there is a qualified privilege in discussing the qualifications of a candidate for a public office. *State v. Haskins,* 109 Iowa 656.

In *Morse v. Times-Rep. Ptg. Co.,* 124 Iowa 707, we said:

"Some effort is made in argument to bring it [the article] within the general scope of the duty which defendant owed to the public. This phase of the doctrine of privilege has been generally invoked in cases where the plaintiff holds or is a candidate for some position of public trust. Such has been the character of the cases in which this court has applied or considered the plea of public duty in defense of a charge of libel. *Mott v. Dawson,* 46 Iowa 533; *State v. Haskins,* 109 Iowa 656; *Bays v. Hunt,* 60 Iowa 251. The utmost extent to which these cases go is that, where a person, knowing or honestly believing that a candidate for public office is guilty of conduct affecting his

fitness for the position to which he aspires, communicates that knowledge or belief to the electors whose support the candidate seeks, acting in good faith in the discharge of his duty to the public, the communication is privileged—a doctrine the correctness of which we need not now consider.''

We have also recognized a qualified privilege in criticism of the conduct of a priest in certain services held in his church. We said:

''A clergyman is a public man, in such sense that public comment in a proper manner upon his sayings and doings in his public capacity is justified.'' *Klos v. Zahorik*, 113 Iowa 161.

In *Ott v. Murphy*, 160 Iowa 730, we said:

''And it is doubtless true that public characters may also be criticised, but even such comment cannot, as a rule, be made an excuse for an attack on private character.''

The courts recognize a qualified privilege in criticism of the official acts of those in public positions, whether they are candidates for public office at the time or not. A matter of public policy and of public concern is involved here. Those who hold positions of public trust and confidence are properly subject to legitimate and proper criticism of the manner in which they perform their duties. This seems to be a necessary penalty of preferment. Such criticism of one in a public position, however, to be within the rule of qualified privilege, must be legitimate and proper. An attack upon the private character of a public official is held to be not within the rule of qualified privilege. *Clifton v. Lange*, 108 Iowa 472, and cases cited. In the instant case, the criticism of appellant by the publication of the article in question was not a criticism of any ''official'' act. The appellant was not a candidate for office, and it cannot fairly be said that the article was an attack upon his private character. Was it, then, still within the rule of qualified privilege? Under the record in the case, we think it must be held that the rule of qualified privilege would apply.

The charge made is, in effect, that the appellant used his official position as judge to ''coerce certain parties having litigation pending before him for judicial determination into doing a certain thing.'' This was not an ''official act;'' but the transaction described in the article, as a part of its very essence,

related to the conduct of the appellant as an official. Had the appellant not been at the time a judge of the Supreme Court, and had the article not referred to him as a judge seeking to "coerce" those having litigation before him, it would not have been libelous *per se*, if libelous at all.

The very gist of the article had direct relation to the fact that the appellant was a public official, and was seeking to obtain favor by virtue of his public position as a judge. We think that criticism of conduct of a public official so closely related to his public office, and having direct and specific reference thereto, is within the rule of qualified privilege, provided, of course, that the other essential elements of such qualified privilege are shown. We therefore hold that it was not error on the part of the court to hold that the answer of the appellee tendered in issue a question of qualified privilege, and that it was proper to submit that issue to the jury.

Qualified privilege is, however, not necessarily a complete defense to an action for libel or slander. One who holds public position does not become thereby the target for the shafts of malice and the javelins of hatred. Those who are vicious and malignant may not conceal attack upon another under a camouflage of qualified privilege. In *Fleagle v. Downing*, supra, we said:

"Where the charge is, on its face, slanderous or libelous, where, on its face, it imputes to one the commission of a public offense, anyone who hides behind any privilege given to him by law must allege and prove the facts and circumstances that bring him within the protection of the privilege."

Where facts and circumstances showing qualified privilege are established, the plaintiff may still recover, if express malice is shown by him. *Morse v. Times-Rep. Ptg. Co.*, 124 Iowa 707; *Hollenbeck v. Ristine*, 105 Iowa 488.

Appellee introduced testimony regarding the information which Mr. Ingham, who wrote the article, received from Mr Sargent respecting the transaction which was made the basis of this article. He also offered evidence respecting belief in its truthfulness, and good faith and justifiable motives in its publication. The appellant offered evidence on the question of

express malice, and to rebut appellee's contention of good faith and proper motives.

The court correctly instructed the jury on the question of qualified privilege and the burden of proof, in accordance with the rules herein recognized. We find no error in the record on the question of qualified privilege and the manner of its submission to the jury.

VI. Other matters of error are urged by appellant. These pertain largely to rulings on the admission of evidence. We have carefully examined all of these, and find no reversible error therein.

The judgment must be, and it is,—*Affirmed.*

STEVENS, C. J., WEAVER, EVANS, PRESTON, and ARTHUR, JJ., concur.

DE GRAFF, J., takes no part.